# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN BELT, *et al.*, | : | |
| Plaintiffs. | : | CIVIL ACTION |
| | : | No. 18-3831 |
| v. | : | |
| | : | |
| P.F. CHANG'S CHINA BISTRO, INC., | : | |
| Defendant. | : | |

August 15, 2019                                                          Anita B. Brody, J.

### MEMORANDUM

Plaintiffs Steven Belt, Laura Council, and James Harris bring a putative class and collective action against P.F. Chang's China Bistro, Inc. ("P.F. Chang's"), alleging wage and overtime violations of the Pennsylvania Minimum Wage Act[1] ("PMWA"), 43 Pa. Stat. Ann. §§ 333.104(a), 333.104(c) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207(a).[2] P.F. Chang's moves for judgment on the pleadings.[3] I will deny P.F. Chang's motion.

---

[1] "Because the PMWA substantially parallels the FLSA, federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA." *Razak v. Uber Techs., Inc.*, No. CV 16-573, 2016 WL 5874822, at *7 (E.D. Pa. Oct. 7, 2016) (internal quotation marks and citations omitted). This opinion will only reference the FLSA, because any result reached under this statute applies equally to Plaintiffs' FLSA claims and Plaintiffs' PMWA claims.

[2] Plaintiffs also brought claims under the Virginia Minimum Wage Act, but the Court approved a joint stipulation dismissing these claims without prejudice. *See* Stipulation of Dismissal, ECF No. 43.

[3] After the Court granted P.F. Chang's consent motion to stay discovery so that P.F. Chang's could file a dispositive motion, *see* ECF No. 33, P.F. Chang's filed its Motion for Summary Judgment. P.F. Chang's consented to this Court considering its Motion as a motion for partial judgment on the pleadings instead. *See* Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 3. Because no discovery has been conducted, and because P.F. Chang's asks the Court to determine only whether Plaintiffs may proceed based on the legal theory in their Complaint, I will consider P.F. Chang's Motion as a motion for judgment on the pleadings.

# I.   BACKGROUND

## A.   <u>Factual Background</u>[4]

P.F. Chang's operates hundreds of restaurants throughout the United States. Compl. ¶ 8. At the time of the filing of the Complaint, Plaintiffs were employed as Servers at various P.F. Chang's restaurants.[5] Compl. ¶ 30.

Plaintiffs were required to perform three different categories of work: tipped work, untipped work related to their occupation as Servers, and work unrelated to their occupation as Servers.[6] Plaintiffs' tipped work included "serving food and drinks to patrons," "wait[ing] on tables and describ[ing] daily specials," "regularly check[ing] on patrons throughout their meal," and collecting payment from customers. Compl. ¶ 30. P.F. Chang's also required Plaintiffs to perform work that did not give them the ability to earn tips because it "did not involve interacting with, nor serving food and beverages to customers." Compl. ¶ 31. This untipped work included both tasks related to Plaintiffs' employment as Servers, and tasks unrelated to Plaintiffs' employment as Servers.[7] The untipped work included:

- Preparatory tasks, such as labeling sauces, preparing drink machines, filling sugar caddies, polishing dishes, and rolling silverware;

- Sanitation and maintenance tasks, such as sanitizing the kitchen and dining area and bagging and taking out trash; and

---

[4] All facts are taken from the Complaint (ECF No. 1) and are accepted as true.

[5] Plaintiff Steven Belt worked at a P.F. Chang's in McLean, Virginia; Plaintiff Laura Council worked at P.F. Chang's locations in Warrington, Pennsylvania and Princeton, New Jersey; and Plaintiff James Harris worked at a P.F. Chang's in Pittsburgh, Pennsylvania.

[6] This allegation leads to both Plaintiffs' minimum wage claims and Plaintiffs' overtime claims: Plaintiffs allege that because they were not paid at the correct minimum wage rate, their overtime wage rate was also incorrect. Compl. ¶ 57.

[7] Plaintiffs define these two types of work as "tip-producing work" and "work that did not give plaintiffs the opportunity to earn tips." For the sake of brevity, I will refer to these as "tipped" and "untipped" work or duties. Although I use the terms "tipped work" and "tipped duties," I am not making a finding, at this stage in the litigation, as to whether Plaintiffs actually earned tips when they performed "tipped work."

- Cleaning tasks, such as cleaning tables and chairs, dusting, sweeping, and polishing.

Compl. ¶¶ 32-34. Plaintiffs' schedules varied, but they routinely worked between twenty and fifty hours each week, in six- to ten-hour shifts. Compl. ¶ 44. During each shift, Plaintiffs spent approximately thirty to fifty percent of their time performing work that did not give them the opportunity to earn tips. Compl. ¶ 45.

Plaintiffs were paid at the tip-credit minimum wage rate—as opposed to the full minimum wage rate—for the entirety of the hours worked for P.F. Chang's.[8] Compl. ¶¶ 38-40. They were paid at the tip-credit rate for both their tipped and untipped work. Compl. ¶ 47.

**B. <u>Statutory and Regulatory Framework</u>**

The Fair Labor Standards Act ("FLSA"), a Department of Labor ("DOL") regulation known as the "Dual Jobs regulation," and a DOL policy document called the Field Operations Handbook ("FOH") set forth the framework for determining when an employer is excused from paying an employee the full minimum wage. I will discuss each of these instruments in turn.

**1. The Fair Labor Standards Act**

The original FLSA, enacted in 1938, requires employers to pay a minimum hourly wage. 29 U.S.C. § 206(a)(1)(C). In 1966, the FLSA was amended to also allow an employer, under certain circumstances, to utilize the tips of a "tipped employee" to meet its minimum wage

---

[8] The federal tipped minimum wage is $2.13 an hour. *See* 29 C.F.R. § 531.50. Multiple states set the tipped minimum wage at a higher rate. *See Minimum Wages for Tipped Employees,* U.S. Dep't of Labor Wage and Hour Div. (Jan. 1, 2019), https://www.dol.gov/whd/state/tipped.htm. Here, Plaintiffs allege that they were paid at a tipped minimum wage rate of $2.35 per hour. *See* Compl. ¶¶ 38-40. The Court is unsure how Plaintiffs arrive at the $2.35 tipped minimum wage rate.

obligations. *See* Fair Labor Standards Act, Pub. L. 89-601, 80 Stat. 830 (1966). Section 203(m) of the FLSA provides:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> > i. the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13]; and
> >
> > ii. an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title [$7.25].
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m)(2)(A).[9]

Therefore, the FLSA does not preclude an employer from paying a tipped employee a cash wage of $2.13 per hour provided that the employee's tips make up the difference between the $2.13 cash wage and the current federal minimum wage. *Id.* Section 203(t) of the FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The difference between the cash wage and the federal minimum wage is known as the "tip credit." *See* 29 C.F.R. § 531.56(d).

---

[9] *See* 29 U.S.C. § 206(a)(1)(C) (setting federal minimum wage at $7.25 an hour); 29 C.F.R. § 531.50 (providing that the cash wage in subsection (1) is $2.13).

## 2. The Dual Jobs Regulation

Beginning in 1967, the DOL promulgated several regulations to address the 1966 FLSA Amendments. This included a regulation addressing the tip-credit provision in Section 203(m), and importantly, it sought to interpret the definition of "tipped employee" set forth in Section 203(t). *See* 32 Fed. Reg. 222 (Jan. 10, 1967) (Notice of Proposed Rulemaking); 32 Fed. Reg. 13575 (Sept. 28, 1967) (Promulgation of Final Rule).

The 1967 regulation concerning the tip-credit provision recognizes that an employee may be engaged in two occupations for the same employer but may only qualify as a "tipped employee" in one of those occupations. *See* 29 C.F.R. § 531.56(e) ("Dual Jobs regulation"). In this situation, an employer may only take the tip credit for the hours an employee spends in the occupation for which he qualifies as a "tipped employee." *Id.* The Dual Jobs regulation states:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.*

## 3. The DOL's Prior Interpretations of the Dual Jobs Regulation

Beginning in 1980, the DOL issued several statements and documents endeavoring to clarify the Dual Jobs regulation. First, the DOL released opinion letters in 1980 and 1985 addressing restaurant servers who spent part of their time performing untipped related duties. The language of the 1980 letter reiterated that when servers only "occasionally" or "part of [the]

time" perform untipped related duties, a tip credit may be taken for time spent on those duties. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH-502 (Mar. 28, 1980), 1980 WL 141336. The 1980 letter also stated that the DOL "might have a different opinion if the facts indicated that specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." *Id*. In the 1985 opinion letter, the DOL stated that when a waiter spent 30 to 40 percent of his or her time performing "preparatory activities" before the restaurant opened—such as setting tables, cleaning and filling salt shakers, and checking supplies of napkins and straws—no tip credit could be taken for this time, because it consumed a "substantial" portion of the waiter's workday. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985), 1985 WL 1259240.

Next, in 1988, the DOL added a section to the Field Operations Handbook ("Handbook") addressing the Dual Jobs regulation. This section read:

> (1) When an individual is employed in a tipped occupation and a non-tipped occupation, for example, as a server and janitor (dual jobs), the tip credit is available only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

> (2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

> (3) However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

> (4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)-(4) (rev. Dec. 15, 2016). The Handbook provided that a tip credit may never be taken for time spent performing work unrelated to the tipped occupation. Additionally, the Handbook provided that a tip credit could only be taken for time an employee spends performing "related," but untipped, duties if the employee spent twenty percent or less of their time performing related duties. Under this principle—known as the "80/20 Rule"—a server who spent two hours or less filling salt shakers during a ten hour shift, and who spent the remainder of his or her shift waiting on customers, could be paid $2.13 an hour for all of the hours he or she worked. But a server who spent more than two hours filling salt shakers and performing other untipped related work would be engaged in dual jobs, and must be paid the full minimum wage for all hours spent performing untipped related work.

In recent years—including as recently as July, 2016—the DOL has adopted the 80/20 Rule in *amicus* briefs to the Eighth, Ninth, and Tenth Circuit Courts of Appeals. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, *Marsh v. J. Alexander's LLC*, 905 F.3d 610 (9th Cir. 2018) (Nos. 15-15791, 15-15794, 15-16561, 15-16659, 16-15003, 16-15004, 16-15005, 16-15118, 16-16033), 2016 WL 3900819; Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellant, *Romero v. Top-Tier Colo., LLC*, 849 F.3d 1281 (10th Cir. 2017) (No. 16-1057), 2016 WL 3922687; Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133.

### 4. The DOL's Current Interpretation of the Dual Jobs Regulation

On November 8, 2018, the DOL's Wage and Hour Division ("WHD") issued an Opinion Letter ("November 2018 Letter") purporting to supersede the 80/20 Rule.[10] U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 (Nov. 8, 2018), 2018 WL 5921455. Stating that "the current FOH sections addressing the tip credit have resulted in some confusion and inconsistent application," the Letter purports to "clarify our Field Operations Handbook (FOH) section 30d00(e)," which in turn interprets "the definition of a 'tipped employee' in section 3(t) of the [FLSA]." *Id*. at *1. According to the Letter, the 80/20 Rule "has created some confusion." *Id*. at *2. To support this, the Letter cites to two 2007 district court cases which, under WHD's reading, arrived at different interpretations of the 80/20 rule. *Id*. at *2-*3.

To resolve this alleged confusion, the Letter states that WHD "do[es] not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met." *Id*. at *3.

Consistent with this Opinion Letter, the WHD revised the Handbook on February 15, 2019 ("Current Handbook"). The Current Handbook reads, in relevant part:

(1) When an individual is employed in a tipped occupation and a non-tipped occupation—for example, as a server and janitor (*i.e.*, dual jobs)—the tip credit is available only for the hours the employee spends working in the tipped occupation, provided the employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

(2) 29 C.F.R. 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips.

---

[10] This Opinion Letter was originally written in 2009. Although the letter was signed by the then-acting Wage and Hour Division Administrator on January 16, 2009, it was withdrawn on March 2, 2009. The present Opinion Letter is substantively identical to the 2009 Opinion Letter. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 (Nov. 8, 2018), 2018 WL 5921455.

(3) WHD staff will consult the Occupational Information Network (O*NET), an online source of occupational information, and 29 CFR 531.56(e) to determine whether duties are related or unrelated to the tip-producing occupation. Duties will be considered related to the tipped occupation when listed as "core" or "supplemental" under the "Tasks" section of the "Details" tab for the appropriate tip-producing occupation in O*NET.

    a. An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service. *See* WHD Opinion Letter WH-502 (March 28, 1980), which concludes that a server's time spent performing related duties (*e.g.*, vacuuming) after restaurant closing is subject to a tip credit. For example, the core tasks currently listed in O*NET for waiters and waitresses (*see* the O*NET Summary Report for waiters and waitresses) include: cleaning tables or counters after patrons have finished dining; preparing tables for meals, which encompasses setting up items such as linens, silverware, and glassware; and stocking service areas with supplies such as coffee, food, tableware, and linens. In addition, O*NET lists garnishing and decorating dishes in preparation for serving as a supplemental task for waiters and waitresses. An employer may take a tip credit for any amount of time a waiter or waitress who is a tipped employee spends performing these related duties.

. . .

(5) An employer may not take a tip credit for the time an employee spends performing any tasks not contained in 29 CFR 531.56(e), or in the O*NET task list for the employee's tipped occupation, or—for a new occupation without an O*NET description—in the O*NET task list for a similar occupation. Some of the time spent by a tipped employee performing tasks that are not related to a tipped occupation, however, may be subject to the *de minimis* rule in 29 CFR 785.47. *See* WHD Opinion Letter FLSA2018-27 (November 8, 2018).

U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)-(4) (rev. Feb. 15, 2019).

The first paragraph—which essentially restates the first half of the Dual Jobs regulation—is unchanged from the previous version of the Handbook. However, the next two paragraphs replace the 80/20 Rule. Under the previous Handbook, an employer could take the tip credit for all the hours worked by a tipped employee (such as a server) if that employee spent up to twenty percent of his or her time performing untipped related work (such as filling salt shakers). If,

however, the employee spent more than twenty percent of his or her time performing untipped related work, then the employer could not take the tip credit for any of the time spent performing untipped related duties. The employer could only take the tip credit for the hours the employee spent performing tipped work.

Under the Current Handbook, this twenty percent threshold is eliminated. Instead, the Current Handbook states that "29 CFR 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation." Current Handbook § 30d00(f)(2). It goes on to say "[a]n employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties— regardless whether those duties involve direct customer service." *Id*. at § 30d00(f)(3)(a). Finally, it states that "[a]n employer may take a tip credit for any amount of time a waiter or waitress who is a tipped employee spends performing these related duties." *Id*. Depending on how this language is interpreted, the Current Handbook either allows an employer to take the tip credit for all the hours worked by an employee regardless of how much time is spent on untipped related work, or as long as such work is performed "contemporaneously with" or "for a reasonable time immediately before or after" performing tipped work.

The same day the DOL issued the Current Handbook, the DOL issued a Field Assistance Bulletin ("February 2019 Bulletin" or "Bulletin"). *See* U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019). The Bulletin restates that the 80/20 Rule "created confusion." *Id*. at 2. It also states that:

> An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service.

*Id.* at 3. The Bulletin instructs that this new policy should be applied in investigations and in enforcement actions.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). There is "no material difference in the applicable legal standards" for a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   DISCUSSION

Plaintiffs claim that P.F. Chang's violated the FLSA by taking the tip credit for all the hours Plaintiffs worked, even though Plaintiffs spent more than twenty percent of their time performing untipped related work.

The FLSA, under Section 203(m), allows employers to take the tip credit for hours worked by "tipped employees." 29 U.S.C. § 203(m)(2)(A).  A tipped employee, under Section 203(t) of the FLSA, is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).[11] Therefore, the question before the Court is whether Plaintiffs are tipped employees, that is, "engaged in an occupation in which [they] customarily and regularly receive[ ] . . . tips", when they spend more than twenty percent of their time performing untipped related work. The Court concludes that they are not

_____

[11] Whether Plaintiffs customarily and regularly received more than $30 a month in tips is not a relevant inquiry at this stage of the litigation.

tipped employees during the time they spend performing untipped related work. Therefore, Plaintiffs' claims may proceed.[12]

A. **Statutory Interpretation of FLSA Section 203(m)**

"The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "If Congress has directly and clearly spoken to the precise question at issue, our . . . analysis is complete . . . and Congress's unambiguously expressed intent controls." *Helen Mining Co. v. Elliot*, 859 F.3d 226, 234 (3d Cir. 2017) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). If Congress has not spoken to the precise question at issue, however, and the agency administering the statute has interpreted the statute, a court must determine whether or not to award *Chevron* deference to that interpretation. *Chevron*, 467 U.S. at 843-44. If the agency's interpretation is based on a permissible interpretation of the ambiguous statutory language, a court must defer to that interpretation. *Id.*

1. **The Statutory Language is Ambiguous**

A statute is ambiguous if "Congress has not addressed 'the precise question at issue,' whether by being 'silent or ambiguous with respect to the specific issue' or by leaving 'a gap for the agency to fill.'" *Helen Mining Co.*, 859 F.3d at 234 (quoting *Chevron*, 467 U.S. at 843-44).[13]

---

[12] Although P.F. Chang's moves for judgment on the pleadings on Plaintiffs' whole case, it never raises Plaintiffs' claims that P.F. Chang's unlawfully took the tip credit for time Plaintiffs spent performing untipped unrelated duties. Therefore, the Court confines its analysis to whether Plaintiffs' claims that P.F. Chang's unlawfully took the tip credit for time Plaintiffs spent performing untipped *related* work.

[13] "As a threshold matter, *Chevron* deference is only appropriate 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Helen Mining Co.*,

Here, the "precise question at issue" is whether an employee who spends some of his or her time performing tip-producing work and some of his or her time performing untipped related duties is a "tipped employee" during every hour he or she works. The FLSA allows employers to meet their minimum wage obligations for "tipped employees" by paying those employees a cash wage of $2.13 per hour, as long as the employee's tips make up the difference between the $2.13 cash wage and the current federal minimum wage. *See* 29 U.S.C. §203(m); *supra* Section I.B.1. Section 203(t) of the FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

P.F. Chang's argues that the FLSA's definition of "tipped employee" is unambiguous, and that the FLSA unambiguously defines a "tipped employee" as any employee who customarily and regularly earns more than $30 a month in tips.[14] Def.'s Mem. in Supp. of Mot. for Summ. J. at 12. To accept this reading of the statute, however, would be to ignore a crucial part of the statutory definition: the term "engaged in an occupation." If Congress wished to define a "tipped employee" as one who customarily and regularly receives more than $30 a

---

859 F.3d at 234 n.10 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)). "[I]t is beyond question that the DOL promulgated the dual jobs regulation . . . in the exercise of its congressionally delegated authority." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 621 (9th Cir. 2018) (en banc).

[14] P.F. Chang's also argues that the Dual Jobs regulation should not receive *Chevron* deference because it was not subject to notice and comment. However, "[p]rocedural challenges to agency rules under the Administrative Procedure Act are subject to the general six-year limitations period in the U.S. Code." *Perez- Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016). Because the Dual Jobs regulation was promulgated in 1967, this argument is "decades too late." *Marsh*, 905 F.3d at 621. Additionally, P.F. Chang's argues that the Dual Jobs regulation is not entitled to *Chevron* deference because it did not appear in the proposed rule. The Dual Jobs regulation was a "logical outgrowth" of the proposed rule, and is eligible for *Chevron* deference. See *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007). This is because "the proposed rule clearly addresses the distinction between tipped and non-tipped employees, and the 'dual jobs' addition simply addresses the scenario in which an individual performs in both a tipped and non-tipped role for the same employer." *Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *5 n.5 (D. Md. Mar. 31, 2017).

month in tips, it would have done so. Instead, Congress defined a "tipped employee" as one who is *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips. A court cannot disregard this language: in deciding whether statutory language is ambiguous (referred to as *Chevron* step one), a court must "decline to treat Congress's choice of words so dismissively; to the contrary, [a court] must presume that Congress's choice of words is deliberate." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 621 (9th Cir. 2018) (en banc) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013)).

Because the statute does not define "engaged in an occupation," Congress has not spoken to the precise question at issue and the statutory language is ambiguous.[15] *See Marsh*, 905 F.3d at 622 ("Neither the plain language of the statute nor its legislative history suggest—much less clearly demonstrate—that section 203(t) is unambiguous."); *Fast v. Applebee's Int'l*, 638 F.3d 872, 879 (8th Cir. 2011) (noting that "Section 203(t) of the FLSA does not define when an employee is 'engaged in an occupation'").

### 2. The DOL's Interpretation is Reasonable

The DOL has promulgated a regulation interpreting the FLSA's definition of tipped employee: the Dual Jobs regulation. Therefore, having determined that the statutory language is ambiguous, a court must determine whether the Dual Jobs regulation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. This is referred to as *Chevron* step two. "[I]f the regulation reflects a reasonable statutory interpretation," courts must "defer to that

---

[15] P.F. Chang's also relies on a Senate report accompanying the 1974 FLSA Amendments to argue that Section 203(t) unambiguously defines waiters as "tipped employees," regardless of how much time they spend performing untipped work. *See* Def.'s Mot. at 30. However, this language merely indicates Congress's belief that waiters and waitresses are "employees who customarily and regularly receive tips"—a fact that is not in dispute. This language does not, however, shed light on Congress's intended meaning of the phrase "*engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." Additionally, "the legislation accompanying the 1974 report did not make any changes to section 203(t)." *Marsh*, 905 F.3d at 622.

construction, even if [the court] may have interpreted the statute otherwise." *Helen Mining Co.*, 859 F.3d at 237. In determining the reasonableness of an agency's statutory interpretation, courts "consider the plain language of the statute, along with its origin and purpose." *Id.*

The Dual Jobs regulation reasonably fills the gap Section 203(t) leaves for the agency to fill: when may employers take the tip credit for employees who are "engaged" in multiple "occupations," only one of which is an occupation in which the employee "customarily and regularly receives more than $30 a month in tips"? The Dual Jobs regulation fills this gap by stating that where an employee is engaged in two occupations, only one of which is tipped—such as an employee who serves as both a maintenance man and a waiter in a hotel—the employee is a "tipped employee only with respect to his employment as a waiter." 29 C.F.R. § 531.56(e); *see also supra* Section I.B.2. The Dual Jobs regulation also gives an example of a waitress who may be classified as a tipped employee of all of the hours he or she works. This waitress may still be classified as a "tipped employee" as long as she performs duties that are related to the tipped occupation and which are "not by themselves . . . directed toward producing tips" no more than "occasionally" or "part of [the] time." *Id.*

This interpretation is consistent with the FLSA's "principal congressional purpose" of "protect[ing] all covered workers from substandard wages" and "ensur[ing] that *each* employee covered by the Act would receive a fair day's pay for a fair day's work. . . ." *Barentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks and alterations omitted). The Dual Jobs regulation furthers this purpose by recognizing that whether an employee is "engaged in a tipped occupation" cannot be determined by the employee's job title alone. Rather, the regulation states that whether an employee is "engaged in a tipped occupation" depends on whether the employee performs duties that are tipped or untipped;

whether any untipped duties are related or unrelated to the "tipped occupation;" and how much time is spent performing untipped duties. This "ensur[es] that employees working in tipped and untipped occupations would not be shortchanged by their employers." *Marsh*, 905 F.3d at 622. It "prevents employers from paying maintenance workers as little as $2.13 an hour, simply because they also happen to work as servers." *Id.* at 623.

Because the Court finds that the term "engaged in an occupation" in Section 203(t) of the FLSA is ambiguous, and that the Dual Jobs regulation is a reasonable interpretation of this language, the Court will afford *Chevron* deference to the Dual Jobs regulation. In doing so, the Court follows the lead of the Eighth and Ninth Circuits, as well as multiple district courts.[16] *See Marsh v. J. Alexander's LLC*, 905 F.3d at 621-623; *Fast* 638 F.3d at 879;[17] *see also, e.g.*, *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 988 (W.D. Mo. 2019); *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp. 3d 1205, 1207 (E.D. Ark. 2019); *Goodson v. OS Rest. Servs.*, LLC, 2017 WL 1957079, at *6 (M.D. Fla. May 11, 2017); *Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, 2017 WL 1196580, at *5 n.5 (D. Md. Mar. 31, 2017); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 733 n.3 (D.S.C. 2015).

## B. Interpreting the Dual Jobs Regulation

Having determined that the Dual Jobs regulation warrants *Chevron* deference, a court must interpret the regulation. Plaintiffs contend that when the Dual Jobs regulation uses the terms "occasionally" and "part of [the] time", this places a twenty percent limit on the amount of

---

[16] Defendants do not cite to, nor is the Court aware of, any federal court decision declining to award *Chevron* deference to the Dual Jobs regulation.

[17] In *Fast*, the parties did not dispute that the Dual Jobs regulation should be afforded *Chevron* deference. *See Fast*, 638 F.3d at 877.

untipped related work an employee may perform before they are no longer a tipped employee during the time spent performing that untipped related work.

Once a court awards *Chevron* deference to a regulation, the analysis does not end there: a court must go on to interpret the regulation. When interpreting a regulation, a court must first determine whether the regulation itself is "genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). If it is not, this ends the inquiry, and a court applies the unambiguous meaning of the regulation. *Id*. If a regulation is ambiguous, a court looks to whether the agency has advanced an interpretation of the regulation that warrants either *Auer* or *Skidmore* deference. *Id*. at 2414. The first kind of deference to an agency's interpretation of an ambiguous regulation—called *Auer* deference[18]—is based on the presumption that "Congress intended for courts to defer to agencies when they interpret their own ambiguous rules." *Id*. This presumption is not applicable to every agency interpretation, however, and *Auer* deference is unwarranted "when the reasons for that presumption do not apply, or countervailing reasons outweigh them." *Id*.

If a court determines that *Auer* deference is unwarranted, a court must consider whether to award *Skidmore* deference: "a measure of deference proportional to . . . all those factors which give [the interpretation] power to persuade." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (internal quotation marks omitted).

Finally, if a court determines that the agency interpretation merits neither *Auer* nor *Skidmore* deference, a court must employ "traditional tools of interpretation" to determine the meaning of the regulation without deference to the agency interpretation. *Christopher*, 567 U.S.

---

[18] *Auer* deference is also sometimes referred to as *Seminole Rock* deference, after the case in which it was first employed. *Kisor*, 139 S. Ct. at 2408 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)).

at 161. In doing so, a court should consider "the ordinary and natural meaning of the regulatory language within its context and the [regulation's] overarching purpose." *McCann v. Unum Provident*, 907 F.3d 130, 144 (3d Cir. 2018).

## 1. The Dual Jobs Regulation is Ambiguous

A court's first step in interpreting a regulation is determining whether the regulation is "genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415. In making this determination, "a court must exhaust all the 'traditional tools' of construction." *Id*. (quoting *Chevron*, 467 U.S. at 843 n.9). "[A] court must 'carefully consider[ ]' the text, structure, history, and purpose of a regulation . . . ." *Id*. (quoting *Pauley v. Beth Energy Mines*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting)).

Here, the Dual Jobs regulation is genuinely ambiguous. In defining who is "engaged in an occupation in which [the employee] customarily and regularly receives more than $30 a month in tips," the Dual Jobs regulation lays out two ends of a spectrum. At one end is the employee who is engaged in the dual jobs of maintenance man and server, and at the other is the employee who is engaged in only a single tipped occupation, despite "occasionally" or "part of [the] time" performing related, untipped work. 29 C.F.R. § 531.56(e); *see also supra* Section I.B.2. But the regulation does not define the temporal limits on untipped related work, and is silent and ambiguous as to how to classify employees whose duties fall somewhere between the two ends of the spectrum.

The first example given in the regulation—one end of the spectrum—is a person who works both as a maintenance man and as a server. Such a person is "employed in a dual job" and is classified as a tipped employee for only one of those jobs (server).

The regulation then provides two examples of employees who are at the other end of the spectrum and who are not engaged in dual jobs: "a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses" and "a counterman who also prepares his own short orders or who, as part of a group of countermen, *takes a turn* as a short order cook for the group." 29 C.F.R. § 531.56(e) (emphasis added). These examples both describe employees engaged in a tipped occupation who spend some limited amount of time performing duties "related" to the tipped occupation, but which "are not by themselves . . . directed toward producing tips." *Id*. These employees are "tipped employees" for both their tipped work and untipped related work.

But the regulation is genuinely ambiguous with respect to the middle of the spectrum, where tipped employees may perform untipped related work more than "part of [the] time" or "occasionally," but are not engaged in two distinct occupations. *See Fast*, 638 F.3d at 877 (finding that the Dual Jobs regulation "does not address the impact of an employee performing related duties more than "part of [the] time" or more than "occasionally""). By not defining what, precisely, the temporal limits on related work for tipped employees are, the Dual Jobs regulation "only produces more questions." *Marsh*, 905 F.3d at 624. When does a server cross the line from being a tipped employee who "occasionally" performs untipped related work to being a dual-job employee who is engaged in two occupations, only one of which is a tipped occupation?

P.F. Chang's argues that the regulation unambiguously "provides that servers engaging in activities that do not directly lead to tips are still 'tipped employees' for whom a tip credit can be taken and are not engaged in a dual occupation." Def.'s Mot. at 20. This is incorrect. The Dual Jobs regulation is ambiguous as to how much time a server may spend performing untipped related duties before they must be treated as a dual jobs employee. As the court observed in

*Marsh*, if "the DOL intended to unambiguously foreclose servers from being dual job employees regardless of the amount of time they spend on related, but untipped duties, the regulation would not include the temporal limitations it does." *Marsh*, 905 F.3d at 625.

The Dual Jobs regulation is also ambiguous in at least two other respects. In the example of the employee who is "employed in two occupations" as a server and as a maintenance man, the regulation does not "explain *how* to classify the person's occupation—whether through official title, expected duties, or some other method." *Marsh*, 905 F.3d at 624; *see also Fast*, 638 F.3d at 877. Additionally, the regulation does not define what it means for duties to be "related" to a tipped occupation. The regulation provides examples of several duties that are related to the tipped occupation of waitress—cleaning and setting tables, toasting bread, making coffee, and washing dishes or glasses—but gives no guidance as to how to classify other duties as either related or unrelated. *See* 29 C.F.R. § 531.56(e); *see also Marsh*, 905 F.3d at 625; *Fast*, 638 F.3d at 877.

### 2. The DOL's Current Interpretation Does Not Warrant Deference

Both parties agree that the current DOL interpretation of the Dual Jobs regulation does not warrant deference. It is obvious why: the current interpretation is unreasonable and does not reflect the DOL's fair and considered judgment. Nevertheless, a court must independently evaluate whether the DOL's current interpretation of the Dual Jobs regulation warrants either *Auer* or *Skidmore* deference before interpreting the regulation on its own. *See Kisor*, 139 S. Ct. at 2411 (explaining that, under certain circumstances, "a court *should* defer to the agency's construction of its own regulation") (emphasis added).

### a. The DOL's Current Interpretation Does Not Warrant *Auer* Deference

A court may award *Auer* deference to an agency's reasonable interpretation of an ambiguous regulation. However, as the Supreme Court recently stated, even if an agency's interpretation is reasonable, "*Auer* deference is not the answer to every question of interpreting an agency's rules. Far from it." *Kisor*, 139 S. Ct. at 2414. Rather, "a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Id.* at 2416. This inquiry is essentially intended to determine whether the bedrock presumption of *Auer* deference—that Congress intended courts to defer to reasonable interpretations of ambiguous regulations under certain circumstances—applies to a given interpretation, or whether "countervailing reasons outweigh" this presumption. *Id.* at 2414.

While this inquiry into whether an agency's reasonable interpretation of an ambiguous regulation warrants *Auer* deference "does not reduce to any exhaustive test," there are at least three conditions that must be met. *Kisor*, 139 S. Ct. at 2416-18. An agency's interpretation must "reflect fair and considered judgment", *id.* at 2417 (internal quotation marks omitted), and cannot create an "'unfair surprise' to regulated parties." *Id.* (quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007)). Additionally, "the regulatory interpretation must be one actually made by the agency" and "must be the agency's 'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's views." *Id.* at 2416 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 257-59, and n.6 (2001) (Scalia, J., dissenting)). Finally, "the agency's interpretation must in some way implicate its substantive expertise." *Id.* at 2417.

### i. The DOL's Current Interpretation is Unreasonable

In order to be eligible for *Auer* deference, an agency interpretation of an ambiguous regulation must be reasonable. *Kisor*, 139 S. Ct. at 2415. As the Supreme Court has cautioned, this "is a requirement an agency can fail." *Id*. at 2416. An agency's interpretation of an ambiguous regulation is held to the same reasonableness standard as an agency's interpretation of an ambiguous statute. *Id*. To be reasonable, an interpretation must be "based on a permissible construction" of the regulation. *Chevron*, 467 U.S. at 843. Put another way, it "must come within the zone of ambiguity a court has identified after employing all its interpretative tools." *Kisor*, 139 S. Ct. at 2415-16. An agency's interpretation that is "'plainly erroneous or inconsistent with the regulation'" is not reasonable and does not warrant deference. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)).

The DOL's current interpretation of the Dual Jobs regulation is advanced in three instruments: the November 2018 Opinion Letter, the Current Handbook, and the February 2019 Bulletin. *See supra* Section I.B.4. All three contain language that places some limit on the amount of time an employee can spend performing related, untipped work while still being paid the tipped minimum wage for the entirety of hours works. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 at *3 (Nov. 8, 2018), 2018 WL 5921455 ("No limitation shall be placed on the amount of these [untipped related] duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties."); Current Handbook § 30d00(f)(3)(a) ("An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or

for a reasonable amount of time immediately before or after performing the tipped duties—

regardless whether those duties involve direct customer service."); U.S. Dep't of Labor, Wage &

Hour Div., Field Assistance Bulletin No. 2019-2 at 3 (Feb. 15, 2019) (same).

At the same time, the Current Handbook and the February 2019 Bulletin contain

language stating that an employer can take the tip credit for all the hours worked by a tipped

employee, regardless of how many of those hours are spent performing related and untipped

work. *See* Current Handbook § 30d00(f)(2) ("29 C.F.R. 531.56(e) permits the employer to take a

tip credit for any time the employee spends in duties related to the tipped occupation, even

though such duties are not themselves directed toward producing tips."); *id*. at § 30d00(f)(3)(a)

("An employer may take a tip credit for any amount of time a waiter or waitress who is a tipped

employee spends performing these related duties."); U.S. Dep't of Labor, Wage & Hour Div.,

Field Assistance Bulletin No. 2019-2 at 2 (Feb. 15, 2019) ("In fact, § 531.56(e) includes non-

tipped duties in the tip credit unless they are unrelated to the tipped occupation or part of a

separate, non-tipped occupation in a 'dual job' scenario.").

It is therefore not clear what the DOL's current interpretation is: is there some limit on

the amount of related and untipped work a tipped employee can perform before he or she become

engaged in "dual jobs," or is there no limit? This internal inconsistency alone undermines the

reasonableness of the interpretation. *See, e.g.*, *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 799

F.3d 1257, 1268 (9th Cir. 2015) (declining to award *Auer* or *Skidmore* deference to an

interpretation that was internally inconsistent and left the court "to guess what . . . [is] required

in order to ensure compliance with the statute as interpreted by the [agency]").

Additionally, if the DOL's interpretation is taken to be that there is no limit on the

amount of time an employer may require an employee to spend on related and untipped work

while still taking the tip credit for all the employee's hours, this is plainly inconsistent with the Dual Jobs regulation. The regulation, by using the terms "occasionally," "part of [the] time," and "takes a turn," places some undefined temporal limit on the amount of time a tipped employee may spend performing related and untipped work before he or she becomes an employee engaged in two occupations, one tipped and one untipped. An interpretation proclaiming that there is *no* limit on the amount of related and untipped work directly contradicts the temporal language in the Dual Jobs regulation, and is unreasonable.

The DOL's interpretation could also be taken to be that an employer may take the tip credit for all the hours a tipped employee spends performing related and untipped work, so long as that work is "performed contemporaneously with the tipped duties" or "for a reasonable amount of time immediately before or after performing the tipped duties."

The first "limitation" placed on untipped related work—"contemporaneously"—leads to an absurd result. It apparently envisions an employee who is performing tipped work, such as taking a customer's order, while at the exact same time performing untipped related work, such as filling salt shakers. *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/contemporaneously (last visited August 7, 2019) (defining "contemporaneous" as "existing, occurring, or originating during the same time").

The second "limitation"—"for a reasonable amount of time immediately before or after"—could be a permissible construction of the temporal limits in the Dual Jobs regulation. Even this, however, may conflict with the language of the regulation. While the temporal terms "occasionally," "part of [the] time," and "takes a turn" suggest that a tipped employee should only infrequently perform untipped related duties, a "reasonable amount of time" is not necessarily so limited. In sum, because the DOL's current interpretation contradicts itself, and

because any temporal limitations it imposes on untipped related work conflict with those in the text of the Dual Jobs regulation, it is unreasonable.

### ii. The DOL's Current Interpretation Does Not Reflect Fair and Considered Judgment

Even if the DOL's interpretation were reasonable, it would not merit *Auer* deference because it does not reflect the agency's "fair and considered judgment." *See Kisor*, 139 S. Ct. at 2417. "[A] court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties." *Id*. at 2417-18 (quoting *Long Island Care*, 551 U.S. at 170). "That disruption of expectations may occur when an agency substitutes one view of a rule for another." *Id*. at 2418. Because of this principle, the Supreme Court has "only rarely given *Auer* deference to an agency construction 'conflict[ing] with a prior' one." *Id*. (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)).

As both parties recognize, the DOL's current interpretation of the Dual Jobs regulation is an express reversal of its prior position, the 80/20 Rule. That prior position had been held since at least 1988, when the 80/20 Rule was added to the Field Operations Handbook. As recently as July 2016, the DOL continued to assert this position in amicus briefs.[19] *See supra* Section I.B.3 (citing amicus briefs). Moreover, the 80/20 Rule was consistently awarded *Auer* deference by the federal courts. *See, e.g.*, *Fast*, 638 F.3d at 879; *Barnhart*, 2017 WL 1196580 at *6 (finding that "the majority of courts . . . have deferred to" the 80/20 Rule and collecting cases). As Plaintiffs correctly point out, when they filed their complaint, the validity of the 80/20 rule was "beyond serious challenge." Pls.' Mem. in Opp. at 17.

---

[19] P.F. Chang's argues that DOL's adherence to the 80/20 Rule has not been consistent because DOL issued, but then quickly withdrew, an opinion letter vacating the 80/20 rule in early 2009. This did not amount to a policy change. *See Marsh*, 905 F.3d at n.23 631. Even if this had been a reversal in policy, there is no dispute that the DOL has consistently adhered to the 80/20 Rule for the last decade.

Given this longstanding consistency, the DOL's recent abandonment of the 80/20 Rule is an "unfair surprise." Moreover, the policy change is unexplained. The November 2018 Opinion Letter—which is virtually unchanged from the Opinion Letter issued and then withdrawn in 2009—states that the policy change is warranted because the 80/20 Rule "resulted in some confusion and inconsistent application." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 at 2 (Nov. 8, 2018), 2018 WL 5921455. As evidence of this, the Opinion Letter cites to two district court cases from 2007 that purportedly came to different conclusions about the 80/20 rule. But the case the Letter cites as "rejecting" the 80/20 rule actually decided that determining the validity of the interpretation was "unnecessary" given the facts of the case. *See Pellon v. Bus. Representation Int'l*, 528 F.Supp.2d 1306, 1314 (S.D. Fla. 2007). More troublingly, the Opinion Letter fails to acknowledge the subsequent decade of case law consistently deferring to the 80/20 Rule,[20] and the DOL's consistent support of the 80/20 Rule in amicus briefs. It is difficult to conceive of an individual or entity who could be "confused" about how to interpret the Dual Jobs regulation.

As the Supreme Court cautioned in *Kisor*, an agency's change in policy position will rarely warrant *Auer* deference. Because the DOL's current interpretation is unreasonable and does not reflect the agency's fair and considered judgment, there is no reason to make this case the exception to the rule.[21] The Court will not award *Auer* deference to the DOL's current interpretation of the Dual Jobs regulation.

---

[20] *See, e.g.*, *Marsh*, 905 F.3d at 632 (awarding *Auer* deference to the 80/20 Rule); Fast, 638 F.3d at 879 (same); *Barnhart*, 2017 WL 1196580 at *6 (finding that "the majority of courts . . . have deferred to" the 80/20 Rule and collecting cases).

[21] It is unnecessary to address the other two *Auer* requirements, because a reasonable agency interpretation only warrants *Auer* deference if all three requirements are met. *See* Kisor, 139 S. Ct. at 2416-18 (stating that an agency interpretation "must" satisfy all three requirements).

### b. The DOL's Current Interpretation Does Not Warrant Skidmore Deference

Even if a court does not award *Auer* deference to an agency interpretation, it must consider whether to award *Skidmore* deference to the interpretation. *Kisor*, 139 S. Ct. at 2414. Courts should only afford *Skidmore* deference to an agency interpretation "to the extent it has the power to persuade." *Id.* (internal quotation marks omitted). In deciding whether to award *Skidmore* deference, courts apply "a sliding-scale test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors," including "whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy." *Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.*, 873 F.3d 420 (3d Cir. 2017) (internal quotation marks omitted).

*Skidmore* deference to the DOL's interpretation of the Dual Jobs regulation is unwarranted for many of the same reasons that *Auer* deference is inappropriate. *Cf. Kisor*, 139 S. Ct. at 2424-25 (Roberts, C.J., concurring) (observing that "the cases in which *Auer* deference is warranted largely overlap with the cases in which it be unreasonable for a court" to not award *Skidmore* deference). The DOL's current interpretation was issued decades after the tip-credit provision was added to the FLSA, is unreasonable, and abandons decades of consistent agency policy without explanation. It has no "power to persuade", and the Court will not afford it *Skidmore* deference.[22]

---

[22] The majority of district courts faced with the issue have also declined to defer to the DOL's current interpretation of the Dual Jobs regulation. *See, e.g., Spencer v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 2931304, at *6 (W.D. Va. July 8, 2019); *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp. 3d 1205, 1210-11 (E.D. Ark. 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 986 (W.D. Mo. 2019). The only district course decision deferring to the DOL's current interpretation of the Dual Jobs regulation was decided before the Supreme Court's *Kisor* decision clarified the standard for *Auer* deference. *See*

### 3. The Dual Jobs Regulation Places a Twenty Percent Limit on Untipped Related Work

Because the DOL's current interpretation does not merit deference, a court must interpret the Dual Jobs regulation on its own to determine if, as alleged, the FLSA imposes a twenty percent limit on the amount of untipped related work an employee may perform and still be classified as a tipped employee for the entirety of the hours worked.

When interpreting a federal regulation, courts "look to well-established principles of statutory interpretation." *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 199 (3d Cir. 2015). "Where the language of a regulation is plain and unambiguous," this ends the inquiry. *McCann*, 907 F.3d at 144. But where, as here, the regulation is ambiguous, courts resolve this ambiguity by "adopt[ing] the best or most reasonable interpretation." *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 252 (3d Cir. 2015). To determine the best or most reasonable interpretation, courts "consider the ordinary and natural meaning of the regulatory language within its context and the [regulation's] overarching purpose." *McCann*, 907 F.3d at 144. Courts should not interpret a regulation in a way that "would be contrary to the fundamental purpose" of the underlying statute. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d. Cir. 2007). *See also Lewis v. Atlas Van Lines*, 542 F.3d 403, 411 (3d Cir. 2008) (looking to purpose of statute when interpreting regulation).

The plain language of the Dual Jobs regulation places a temporal limit on the amount of untipped related work an employee can perform before they become engaged in "dual jobs." *See Marsh*, 905 F.3d at 628; *Fast*, 638 F.3d at 879. It draws a distinction between an employee engaged in dual jobs—one tipped and one untipped—and an employee who is engaged in a

---

*Shaffer v. Perry's Restaurants, Ltd.*, No. SA-16-CA-1193-FB, 2019 WL 2098116, at *1 (W.D. Tex. Apr. 24, 2019).

single, tipped occupation despite "occasionally", "part of [the] time", or while "tak[ing] a turn" performing related duties that are not "directed toward producing tips." *See* 29 C.F.R. § 531.56(e).

P.F. Chang's proposed interpretation—that there is *no* limit on the amount of untipped related work an employee can perform—plainly contradicts the Dual Jobs regulation, because it does not reflect the regulation's temporal limits on untipped related work. Plaintiffs' proposed interpretation—that there is a twenty percent limit on time spent performing untipped related work—is reasonable. *See Marsh*, 905 F.3d at 622; *Fast*, 638 F.3d at 879. For the reasons below, the Court finds that this interpretation is not only reasonable, but is also the best interpretation of the Dual Jobs regulation.

As discussed above, the Dual Jobs regulation is ambiguous. Therefore, the Court must determine what limits the Dual Jobs regulation places on the amount of untipped related duties a tipped employee can perform by looking to the purpose of the regulation and the underlying statute, the language's ordinary meaning, and the context of the regulation.

A twenty percent limit follows from the ordinary meaning of the regulation. "Occasionally" means "now and then, at times, sometimes; irregularly and infrequently." OED Online, https://www.oed.com/view/Entry/130122 (last visited Aug. 7, 2019). *See also Fast*, 638 F.3d at 879-80 (citing Webster's Third New Int'l Unabridged Dictionary (1986) to define "occasionally" as "now and then; here and there; sometimes"). Therefore, the ordinary meaning of the regulation suggests that an employer cannot take the tip credit for time an employee spends performing untipped related duties if such duties are performed more than infrequently. Twenty percent is a reasonable interpretation of "occasionally" or "part of [the] time."

Furthermore, applying a twenty percent limit to untipped related work is consistent with the DOL's routine use of a twenty percent threshold in analogous contexts. The DOL consistently uses "a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA." *Fast*, 628 F.3d at 881; *see also Marsh*, 905 F.3d at 629 (finding that the 80/20 Rule was "consistent with [the DOL's] treatment of other temporal limitations"). For example, a DOL regulation states that a seaman is employed as a seaman, and exempt from overtime under the FLSA, even if performs non-seaman work that "is not substantial in amount." 29 C.F.R. § 783.37. The regulation draws the line between "not-substantial" and "substantial" at twenty percent. *Id*. The DOL also consistently places a twenty percent limit on the amount of nonexempt work that many other types of exempt employees may perform. *See, e.g.*, 29 C.F.R. § 553.212(a) (stating that employees working in law enforcement are exempt under the FLSA as long as they perform nonexempt work for no more than twenty percent of the hours worked in a given workweek); 29 C.F.R. § 552.6(b) (stating that employees who provide companionship services are exempt even if they perform general household work for an amount of time that is no more than twenty percent of the hours worked); 29 C.F.R. § 786.100 (placing a twenty percent limit on nonexempt work performed by exempt switchboard operators); 29 C.F.R. 786.150 (placing a twenty percent limit on nonexempt work by exempt rail carriers); 29 C.F.R. 786.200 (placing a twenty percent limit on nonexempt work by exempt taxi drivers).

In addition to the DOL consistently using a twenty percent limit in analogous contexts, the DOL used a twenty percent limit in *this* context for thirty years, and this was found reasonable and sanctified by numerous federal courts over the past decade. *See, e.g.*, *Marsh,* 905 F.3d at 630 (holding that a twenty percent limit on untipped related work "closely hews to the

framework suggested by the dual jobs regulation"); *Fast*, 638 F.3d at 881 (finding that "[t]he 20 percent threshold . . . is a reasonable interpretation of the terms "part of [the] time" and occasionally" in the Dual Jobs regulation); *Foster v. New Apple, Inc.*, No. 0:16-CV-3705-BHH, 2017 WL 10504645, at *7 (D.S.C. Aug. 8, 2017); *Barnhart*, 2017 WL 1196580 at *6; *Irvine*, 106 F. Supp. 3d at 735; *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 584 (S.D.N.Y. 2015).[23]

Finally, a twenty percent limit is workable and provides crucial guidance to employers and employees on the meaning of the Dual Jobs regulation. "A quantitative measure of employees' time . . . [is] tremendously useful in evaluating whether employees are in fact employed in a tipped 'occupation.'" *Irvine*, 106 F. Supp. at 735. Employers are already required to keep records of the hours in which an employee receives tips, and the hours in which they do not—regardless of whether the Dual Jobs regulation applies. *See* 29 C.F.R. § 516.28. Once employees are spending more than twenty percent of their time performing untipped related work, "it is not impracticable for an employer to keep track of time spent on related tasks by requiring employees to clock in any time spent" performing untipped related work. *Marsh*, 905 F.3d at 631.

The Court acknowledges that the Dual Jobs regulation could reasonably be interpreted to impose temporal limits other than twenty percent. However, given the DOL's consistent use of twenty percent in analogous contexts, the large body of case law finding a twenty percent limit reasonable, and the workability of a twenty percent limit, the Court finds that a twenty percent

---

[23] While these decisions concerned whether or not to award *Auer* deference to the 80/20 Rule in the former Handbook, the findings that a twenty percent limit on untipped related work was reasonable still have persuasive weight.

limit on untipped related work is the best and most reasonable interpretation of the Dual Jobs regulation.[24]

A twenty percent limit on untipped related work is also consistent with the Supreme Court's stated purpose of the FLSA. The FLSA "was designed to extend the frontiers of social progress by insuring to all our ablebodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945) (internal quotation marks omitted). A "fair day's pay for a fair day's work" can only be guaranteed if employers' ability to take the tip credit is limited to when their employees are actually "engaged in a tipped occupation." As the Dual Jobs regulation recognizes, a waitress who washes dishes or glasses more than occasionally is not actually a "tipped employee" during that time, even if she spends the rest of her working hours waiting on customers. A twenty percent limit on untipped related work also avoids the "possibility that employers could misuse [the tip credit provision] to withhold wages from dual job employees . . . who are titled 'servers' or 'bartenders,' but who function in actuality as bussers, janitors, and chefs at least part of the time . . . ." *Marsh*, 905 F.3d at 633.

## IV.  CONCLUSION

The Court concludes that when an employee spends more than 80 percent of his or her time performing tipped work—and less than twenty percent of his or time performing untipped

---

[24] Other district courts have also independently interpreted the Dual Jobs regulation to impose a twenty percent limit on the amount of untipped related work an employee may perform before their employer must start paying the full minimum wage for the time spent performing that untipped related work. *See, e.g.*, *Spencer v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 2931304, at *7 (W.D. Va. July 8, 2019); *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp. 3d 1205, 1211 (E.D. Ark. 2019); *see also Irvine*, 106 F. Supp. 3d at 734 (observing, in the context of awarding *Auer* deference to the 80/20 Rule, that "aside from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration").

related work—the employee is a "tipped employee" for all of his or her hours spent performing tipped work and untipped related work. Therefore, under this scenario, an employer is permitted to take the tip credit for all of those hours worked by that employee. When, however, that employee spends more than twenty percent of his or her time performing untipped related work, they are no longer a tipped employee during any of the time they spend performing untipped related work. In essence, they become a dual jobs employee, and the employer is no longer permitted to take the tip credit for any of the hours the employee spends performing untipped related work.[25] Accordingly, Plaintiffs' claim that it violates the FLSA to take the tip credit for all the hours worked by Plaintiffs, when Plaintiffs spent or spend more than twenty percent of their working time performing untipped related duties, is legally cognizable.[26] P.F. Chang's motion for judgment on the pleadings will be denied.


**s/Anita B. Brody**

_____

ANITA B. BRODY, J.


Copies **VIA ECF** 8/15/2019

---

[25] The Court makes no finding on the meaning of the term "related" in the Dual Jobs regulation, because, at this stage of the litigation, P.F. Chang's only asks the Court to determine "whether Plaintiffs may proceed in this case on the basis of the allegation that they spend or spent more than 20% of their working time engaged in side work." Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 3.

[26] Of course, Plaintiffs' claim that they were paid the tipped minimum wage for time spent performing unrelated duties may also proceed, because P.F. Chang's has not moved for judgment on this claim.