**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

**STEVEN BELT, LAURA COUNCIL,**
**GRACE CASTRO, and JAMES HARRIS,**
**individually and on behalf of all others**
**similarly situated and the Putative Classes**

    Plaintiffs,

    v.

**P.F. CHANG'S CHINA BISTRO, INC.**

    Defendant.

Civil Action No.: 18-3831-AB

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR STEP 1 CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO THE FLSA, 29 U.S.C. § 216(b)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

I.  PLAINTIFFS MET THEIR BURDEN................................................................... 1

   A.  Plaintiffs' Evidence Meets the Modest Factual Nexus Standard........................ 2

   B.  Conditional Certification for Servers Working in Defendant's Locations in all 30 States is Warranted.......................................................................................................... 4

   C.  Individualized Inquiries Are Inappropriate at This Stage.................................. 6

   D.  Defendant's Evidence is Properly Considered at the Second Stage Certification Inquiry . 7

   E.  Defendant's Cited Authority is Unavailing ..................................................... 8

   F.  Plaintiffs' Overtime Claims Should Also be Conditionally Certified ............................ 10

II.  DEFENDANT'S JURISDICTION ARGUMENTS SHOULD BE REJECTED ............. 10

   A.  Defendant Has Conceded or Otherwise Waived its Personal Jurisdiction Defense ......... 10

   B.  The Court Should Not Apply a Personal Jurisdiction Analysis to Opt-in Plaintiffs in an FLSA Collective Action ................................................................................ 13

   C.  Bristol-Meyers is Not Controlling, Nor Did it Dramatically Change Class or Collective Action Litigation.............................................................................................. 16

   D.  Defendant's Legal Authority is Inapposite ..................................................... 20

III.  PLAINTIFFS' PROPOSED MANNER OF NOTICE SHOULD BE APPROVED ........ 21

   A.  The Court Should Authorize Electronic Notice in Addition to U.S. Mail...................... 21

   B.  The Benefits of Issuing Notice via Text Message Far Outweigh the Risks .................... 23

   C.  A Reminder Substantially Ensures that the Collective Receive Notice of this Lawsuit .. 24

CONCLUSION............................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

Abercrombie v. Ridge, No. 9-468, 2009 WL 3668112 (W.D. Pa. Nov. 4, 2009) .......................... 6

Archer v. Defenders, Inc., No. 18-470, 2018 WL 5962470 (D. Del. Nov. 14, 2018) ................. 25

Atis v. Freedom Mort. Corp., No. 15-3424, 2016 WL 7440465 (D.N.J. Dec. 27, 2016)............. 23

Barrios v. Suburban Disposal, Inc., No. 12-3663, 2013 WL 6498086
(D.N.J. Dec. 11, 2013) ..................................................................................................... 2, 6

Bernardez v. Firstsource Sols. USA, LLC, No. 17-613, 2019 WL 4345986
(W.D. Ky. Sept. 12, 2019) ..................................................................................................... 22

Bhumithanarn v. 22 Noodle Market Corp., No. 14-2625, 2015 WL 4240985
(S.D.N.Y. July 13, 2015) ..................................................................................................... 22

Bishop v. AT&T Corp., 256 F.R.D. 503 (W.D. Pa. 2009) .......................................................... 7

Bristol-Myers Squibb Co. v. Superior Court of California 137 S. Ct. 1771 (2017) .............. passim

Burkhart-Deal v. Citifinancial, Inc., No. 7-1747, 2010 WL 457127
(W.D. Pa. Feb. 4, 2010) ..................................................................................................... 6

Campbell v. City of Los Angeles, 903 F.3d 1090 (9th Cir. 2018)................................................. 15

Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016)................................................................. 21

Carey v. 24 Hour Fitness USA, Inc., No. 10-3009, 2012 WL 4857562
(S.D. Tex. Oct. 11, 2012)..................................................................................................... 9

Chavira v. OS Rest. Services, LLC, No. 18-10029, 2019 WL 4769101
(D. Mass. Sept. 30, 2019) ..................................................................................................... 20

Clarke v. Flik International Corp., No. 17-1915 (D.N.J. Aug. 16, 2018)...................................... 25

Drummond v. Herr Foods Inc., No. 13-5991, 2015 WL 894329(E.D. Pa. Mar. 2, 2015).............. 6

E.E.O.C. v. Brinker Intern. Payroll Co., L.P., No. 5-1063, 2007 WL 775584
(E.D. Wis. Mar. 9, 2007) ..................................................................................................... 22

Emekekwue v. Offor, No. 11-1747, 2012 WL 5249414 (M.D. Pa Oct. 24, 2012)...................... 13

Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660 (E.D. Pa. 2001) ............................ 8

Fiumano v. Metro Diner Management LLC No. 17-465, 2018 WL 1726574
(E.D. Pa. Apr. 10, 2018) ............................................................................ 4

Fuentes v. Compadres, Inc., No. 17-1180, 2018 WL 2126840, (D. Colo. May 9, 2019)............ 24

Garcia v. Nunn, No. 13-6316, 2016 WL 1169560 (E.D. Pa. Mar. 25, 2016) ............................... 16

Garcia v. Peterson, 319 F. Supp. 3d 863 (S.D. Tex. 2018)............................................................ 19

Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598 (E.D. Pa. 2019)................................... 22, 25

Gervasio v. Wawa Inc., No. 17-245, 2018 WL 385189 (D.N.J. Jan. 11, 2018) .......................... 25

Given v. Love's Travel Stops & Country Stores, Inc., No. 17-1266, 2018 WL 925996
(M.D. Pa. Feb. 16, 2018) ............................................................................ 16

Glick v. White Motor Co., 458 F.2d 1287 (3d Cir.1972) ............................................................. 12

Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000
(D.N.J. Nov. 20, 2012)............................................................................... 16

Harris v. Med. Transp. Mgmt., Inc., 317 F. Supp. 3d 421 (D.D.C. 2018)............................. 22, 23

Hively v. Allis-Chalmers Energy, Inc., No. 13-106, 2013 WL 5936418
(W.D. Pa. Nov. 5, 2013) ............................................................................. 16

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989) ......................................................... 14

Hunt v. Interactive Med. Specialists, Inc., No. 19-13, 2019 WL 6528594
(N.D.W. Va. Dec. 4, 2019) .......................................................................... 18

In re Deloitte & Touche, LLP Overtime Litig., No. 11-2461, 2012 WL 340114
(S.D.N.Y. Jan. 17, 2012)............................................................................. 22

In Re: Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig., MDL No. 2056, 2010 WL
3447783 (W.D. Pa. Aug. 13, 2010) ............................................................ 16

Irving v. Destination Wild Dunes Mgmt., Inc., 132 F. Supp. 3d 707 (D.S.C. 2015) .................. 22

Jones v. Alliance Inspection Mgmt., LLC, No. 13-1662, 2014 WL 1653112
(W.D. Pa. Apr. 24, 2014)............................................................................. 16

Kaiser v. Daiichi Sankyo, Inc., No. 11-2414, 2012 WL 13042875 (D.N.J. Apr. 27, 2012)......... 21

Kidwell v. Ruby IV, LLC, No. 18-2052, 2019 WL 219850 (E.D. La. Jan. 16, 2019) ................. 23

iv

Langlands v. JK & T Wings, Inc., No. 15-13551, 2016 WL 4073548
(E.D. Mich. Aug. 1, 2016) ........................................................................................ 8

Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18-12220, 2019 WL 4493429
(S.D.N.Y. Sept. 9, 2019) ........................................................................................ 23

Manning v. Goldbelt Falcon, LLC, No. 8-3427, 2010 WL 3906735 (D.N.J. Sept. 29, 2010) ....... 6

Martin v. Sprint/united Mgmt. Co., No. 15-5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ...... 22

Mason v. Lumber Liquidators, Inc., No. 17-4780, 2019 WL 2088609
(E.D.N.Y. May 13, 2019) .................................................................................. 18, 19

Meo v. Lane Bryant, Inc., No. 18-6360, 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) ............. 19

Mott v. Driveline Retail Merchandising, Inc., 23 F. Supp. 3d 483 (E.D. Pa. 2014)...................... 7

Mraz v. Aetna Life Ins. Co., No. 12-805, 2014 WL 5018862 (M.D. Pa. Oct. 7, 2014) ............... 24

Murillo v. Berry Bros Gen. Contractors Inc., No. 18-1434, 2019 WL 4640010
(W.D. La. Sept. 23, 2019) ...................................................................................... 22

O'Brien v. Ed Donnelly Enters., 575 F.3d 567 (6th Cir. 2009).................................................... 21

Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co. 484 U.S. 97 (1987) .............................................. 18

Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567 (D.N.J. 2014) ............................ 4

Pereira v. Foot Locker, Inc., 261 F.R.D. 60 (E.D. Pa. 2009)........................................................ 8

Porter v. Merrill Lynch Pierce Fenner & Smith, Inc., No. 17-8043, 2018 WL 5874094
(D.N.J. Nov. 9, 2018)............................................................................................. 25

Rafferty v. Denny's Inc., 2019 WL 2924998 (N.D. Ohio July 8, 2019) ...................................... 21

Reed v. Empire Auto Parts, Inc., No. 13-5220, 2015 WL 761894 (D.N.J. Feb. 23, 2015) ............ 9

Rocha v. Gateway Funding Diversified Mortg. Servs., L.P., No. 15-482, 2016 WL 3077936
(E.D. Pa. June 1, 2016) ................................................................................... 5, 6, 16

Roy v. FedEx Ground Package System, Inc., 353 F. Supp. 3d 43 (D. Mass. 2018)..................... 20

Sabol v. Apollo Grp, Inc., No. 9-3439, 2010 WL 1956591 (E.D. Pa. May 12, 2010) ................. 16

Sanchez v. Santander Bank, N.A., No. 17-5775, 2019 WL 6050738
(D.N.J. Nov. 15, 2019)...................................................................................... 21, 25

Seiffert v. Qwest Corp., 2018 WL 6590836 (D. Mont. Dec. 14, 2018) ................................. 14, 15

Shiqiang Gao v. A Canaan Sushi Inc., No. 18-6442, 2019 WL 6724359
(S.D.N.Y. Dec. 10, 2019)................................................................................................ 22

Sunlight Elec. Contracting Co., Inc. v. Turchi, 918 F. Supp. 2d 392 (E.D. Pa. 2013) ................ 12

Swamy v. Title Source, Inc., 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017.)............ 14, 15, 18, 19

T.J. McDermott Transp. Co., Inc. v. Cummins, Inc., No. 14-4209, 2018 WL 355139
(D.N.J.  Jan. 9, 2018) ................................................................................................... 13

Thomas v. Kellogg Co., 2017 WL 5256634 (W.D. Wash. Oct. 17, 2017)................................. 19

Vasil v. Dunham's Athleisure Corp. d/b/a Dunham's Sports, No. 14-690, 2015 WL 7871360
(W.D. Pa. Dec. 4, 2015)................................................................................................... 5

Wright v. Lehigh Valley Hosp. & Health Network, No. 10-431, 2011 WL 221770
(E.D. Pa. Jan. 20, 2011) .................................................................................................. 8

Zavala v. Wal Mart Stores Inc., 691 F.3d 527 (3d Cir. 2012) ................................................ 2, 19

## Statutes, Regulations and Rules

29 U.S.C. § 216(b) ................................................................................................... 14, 15, 19

Fed. R. Civ. P. 12(g)(2)................................................................................................... 12

Fed. R. Civ. P. 12(h) .................................................................................................. 12, 13

Fed. R. Civ. P. 4................................................................................................................ 18

## INTRODUCTION

Defendant responds to Plaintiffs' motion by asking this Court to reject the established standard for analyzing conditional certification motions, and instead, consider arguments that have been rejected by courts in this District.   This case is in the first stage (or "notice" stage) of the Fair Labor Standards Act ("FLSA") certification process where the standard is lenient.   Yet Defendant's response focuses on the merits of the case and individualized inquiries, none of which are considered here.  The law is clear that Defendant may present these arguments at the second stage of certification after notice is provided to the putative class members and the parties have had the benefit of full discovery, but not now.

Knowing its main arguments are futile, Defendant then claims that a Supreme Court case involving a mass tort claim divests this court of jurisdiction over the claims of plaintiffs who worked for Defendant in states other than Pennsylvania.  Defendant's arguments should be rejected because it previously admitted that this Court has personal jurisdiction over Defendant with respect to the named plaintiffs, its position with respect to the FLSA collective has been squarely rejected by the bulk of the authority to have considered the argument, and regardless, it has waived any personal jurisdiction arguments.

Plaintiffs have more than satisfied the lenient first-stage burden of providing evidence, beyond pure speculation, of a factual nexus between the manner in which Defendant failed to pay the required wages to Plaintiffs and the manner in which it affected other servers. The Court should grant Plaintiffs' motion for conditional class certification and authorize Plaintiffs to disseminate their proposed notice and method of distribution to potential class members.

## I.    PLAINTIFFS MET THEIR BURDEN

Courts in the Third Circuit follow a two-step process for analyzing whether an action may proceed as a collective action under the FLSA.  It is undisputed that Plaintiffs' motion should be

decided using the first stage (or "notice stage") analysis.  Plaintiffs need only make a "modest factual showing" to "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."  Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536, n.4 (3d Cir. 2012). "Conditional certification decisions are generally based on the pleadings and affidavits submitted by the parties.  Accordingly, the conditional certification decision is 'made using a fairly lenient standard, and typically results in conditional certification of a representative class.'"  Barrios v. Suburban Disposal, Inc., No. 12-3663, 2013 WL 6498086, at *2 (D.N.J. Dec. 11, 2013) (quotations omitted).

### A. Plaintiffs' Evidence Meets the Modest Factual Nexus Standard

Through the allegations in the Amended Complaint and the eleven declarations submitted by Plaintiffs and the Opt-in Plaintiffs (collectively "Plaintiffs") from seven different states, Plaintiffs easily meet the lenient first-stage standard for conditional certification, and accordingly, the Court should conditionally certify the requested class of:

> Individuals who work or worked for Defendant as a server at any time from the past 3 years and 288 days (i.e., 3 years and 9.5 months) to the present in the following states: Alabama, Arkansas, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin.[1]

All of Defendant's servers have the same job duties, are subject to the same highly-standardized policies and practices, are paid the same way, are provided the same training, and experience substantially similar employment conditions.  Based on evidence set forth by Plaintiffs,

---

[1] Plaintiffs remove its request for conditional certification of the restaurants Defendant operates in New York.

all were required to regularly work substantial untipped side work—more than 20% of their workweek.

Indeed, it is undisputed that servers working in states that allow a tip credit wage (the states where Defendant's restaurants operate that Plaintiffs seek to certify) are paid the tip credit rate allowed by that state plus tips. (ECF No. 73-3, Gervais Dep. 150:22–151:1.) Because Defendant does not track the performance of untipped side work, and servers are not allowed to clock in under a different job code when they perform such work, it is also undisputed that *all* servers in these states are paid the sub-minimum tip credit wage for untipped tasks. (Id. at 211:13–16.) Further, each restaurant also expects the same side work to be performed by job position. To explain, Defendant's corporate representative testified that each management team at each restaurant knows which side work is necessary because the side work at Defendant's restaurants is "all relatively the same." (Ex. 8,[2] Gervais Dep. at 98:24-99:15.) Each management team also knows which side work is expected by position, meaning "[t]here are things we would not ask a server to do." Id. Plaintiffs presented sufficient evidence that Defendant requires its servers to perform untipped work before the restaurants at which they work open, during and after their shifts, and after the restaurant closes. (Plfs.' Memo., ECF No. 73-1 at 6-8.) The eleven plaintiffs—from seven different states and nine different restaurants—estimate that they spent between 25% and 50% of their time performing duties in which they do not interact with customers and could not earn a tip.[3] (Id. at 8.)

_____

[2] Exhibit 8 is attached to the Declaration of Reena I. Desai submitted in connection with this Reply Memorandum. The exhibit number continues numbering from the exhibits submitted in support of Plaintiffs' opening memorandum.

[3] The Court has already ruled that servers spending over 20% of their time of a workweek performing untipped work related to the occupation of server requires payment of the full

Defendant does not dispute that this untipped work occurs or that it is required.  Instead, it suggests Plaintiffs must prove that Defendant had a written policy or other guidance requiring servers to spend 20 percent or more of their time performing untipped side work.  (See Def.'s Opp. Plfs.' Mot. Conditional Cert., ECF No. 76 at 7.)  But that is not the standard.  Plaintiffs need not point to a written policy that says: "servers must spend at least 20 percent of their time performing untipped side work."  Rather, Plaintiffs have presented some evidence, beyond pure speculation, that the expectations and policies applicable to servers required them to regularly work substantial untipped work—more than 20% of their workweek—for which Defendant did not track.  This is no different than in Freedom Mortgage, where the court determined that "the ten affidavits submitted in support of conditional certification each uniformly allege that the workload imposed on underwriters, as well as the policies concerning their work, required them to work in excess of forty hours per week, and that supervisors instructed these underwriters not to record any hours in excess of that time."  Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567, 572–73 (D.N.J. 2014).  This case is also similar to Fiumano v. Metro Diner Management LLC, where the court granted conditional certification of a class consisting of servers who worked at Defendant's non-franchised restaurant locations based on the plaintiff's "evidence of [defendant's] standardized policies and practices regarding the nature and amount of sidework performed by Servers."  No. 17-465, 2018 WL 1726574, at *4 (E.D. Pa. Apr. 10, 2018).

**B. Conditional Certification for Servers Working in Defendant's Locations in all 30 States is Warranted**

Plaintiffs need not present a declaration from each restaurant it seeks to certify, as Defendant suggests.  Defendant's restaurants all have essentially the same menu, provide the same

---

minimum wage.  Belt v. P.F. Chang's China Bistro, Inc., 401 F. Supp. 3d 512 (E.D. Pa. 2019) (ECF No. 56.)

"guest experience," provide the same server training, use the same POS system, and applies the same payroll policies to its servers. Each restaurant also expects the same side work to be performed by servers. (Ex. 8, Gervais Dep. at 98:24-99:15.) And, of course, Plaintiffs testified through their declarations that they spent between 25% and 50% of their workweek on untipped work. Three Plaintiffs also allege they know one or multiple servers at other P.F. Chang's locations who are required to perform similar amounts of untipped labor. (See Belt Decl. ¶ 13; Butler Decl. ¶ 13; Stanley Decl. ¶ 13.)

Plaintiffs have presented more than enough evidence at this lenient stage to warrant certification at all of Defendant's restaurants in the identified 30 states. Other courts within this circuit have conditionally certified cases in all of defendant's locations despite testimony from only a few. In Vasil, for example, the court conditionally certified a collective of assistant store managers ("ASM's") in 200 store locations based on the plaintiff's declaration, two opt-in plaintiff declarations, and the defendant's answer, despite the defendant's submission of 150 declarations from ASM's across the country attempting to show no uniformity among job duties. Vasil v. Dunham's Athleisure Corp. d/b/a Dunham's Sports, No. 14-690, 2015 WL 7871360, at *4 (W.D. Pa. Dec. 4, 2015). The court determined that while the defendant may ultimately "be able to show that there is not pure identity as to what each [ASM's] day-in, day-out duties were, at each location, in every one of the [defendant's stores], that is not the test" at the conditional certification stage. Id.; see also Rocha v. Gateway Funding Diversified Mortg. Servs., L.P., No. 15-482, 2016 WL 3077936, at *8 (E.D. Pa. June 1, 2016) ("Given the FLSA's broad remedial purpose, Plaintiffs need not adduce evidence from employees located in every state in which [defendant] operates to satisfy their burden of proof for certification of a nationwide collective action.") (collecting cases).

**C.  Individualized Inquiries Are Inappropriate at This Stage**

Despite admitting that the Court should apply the first-stage analysis, Defendant ignores the FLSA's certification framework and argues that individualized claims and defenses preclude conditional certification.  Defendant's plea to depart from the established first-stage standard should be rejected.

The purpose of conditional certification is to notify potential class members that they may have claims before their claims fall victim to the running statute of limitations.  See Manning v. Goldbelt Falcon, LLC, No. 8-3427, 2010 WL 3906735, at *1 (D.N.J. Sept. 29, 2010).  Once discovery is largely complete and the case is ready for trial, the Court may make a final determination on whether the collective group is similarly situated enough to proceed to trial as a representative action.  Id. at *2.  It is only at this second stage, when the Court has a complete evidentiary record on which to base its decision, that the Court considers individualized inquiries.  See, e.g., Rocha, 2016 WL 3077936, at *9 ("Gateway's argument that individualized determinations will make this case unsuitable for a collective proceeding is 'best left for the second stage of FLSA collective action certification.'")  (citing Drummond v. Herr Foods Inc., No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015)); Barrios, 2013 WL 6498086, at *3 ("This 'individualized inquiry' argument is properly addressed on a motion for final certification, not a motion for conditional certification."); Burkhart-Deal v. Citifinancial, Inc., No. 7-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) ("[D]efendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process.") (citations omitted); Abercrombie v. Ridge, No. 9-468, 2009 WL 3668112, at *6 (W.D. Pa. Nov. 4, 2009) ("[I]n most cases, the question whether individualized inquiries would predominate should be resolved during

stage two of the certification analysis, that is, when the factual record is more complete.") (citing Bishop v. AT&T Corp., 256 F.R.D. 503, 509 n.7 (W.D. Pa. 2009)).

Indeed, this Court, in Mott v. Driveline Retail Merchandising, Inc., followed many courts within the Third Circuit that reject the argument that individualized inquiries preclude conditional certification.  23 F. Supp. 3d 483, 490 (E.D. Pa. 2014).  In Mott, the defendant argued that plaintiff's claims were "too individualized" to litigate as a collective action because the plaintiff-merchandisers had "varying duties requiring varying amounts of administrative time and drive time." Id. at 490.  This Court deemed the defendant's argument "unavailing," finding it relevant only at the decertification stage after discovery has been completed.  Id.  Similarly, Defendant's claim here that whether a server spent more than 20 percent of his or her time performing untipped side work requires individualized inquiries is also unavailing at this juncture and is appropriate to consider at decertification after the parties have the benefit of full discovery.

The first-stage standard is clear: individualized inquiries are inappropriate at this stage of the litigation.  Defendant will have the opportunity to make its "individualized issues" arguments, but the time is not now.

**D. Defendant's Evidence is Properly Considered at the Second Stage Certification Inquiry**

Defendant submits declarations from several servers stating that while they spend a portion of their week performing untipped work similar to what Plaintiffs allege (e.g., restocking glasses, refilling ice, polishing dishes, making iced tea and coffee, refilling sauces, restocking, folding napkins, cleaning beverage stations) they usually spend less than 20% of their week performing such tasks.  (See, e.g., ECF No. 76-3, Carter Decl.; ECF No. 76-4, Deed Decl.; ECF No. 76-5, Gilmore Decl.; ECF No. 76-6, Lewis Decl.)

At this lenient stage of certification, however, the Court should focus on whether Plaintiffs have met their burden—not Defendant's declarations attempting to present conflicting factual evidence.  Wright v. Lehigh Valley Hosp. & Health Network, No. 10-431, 2011 WL 221770, at *4 (E.D. Pa. Jan. 20, 2011) ("[The plaintiff] need only show some evidence beyond mere speculation that the [defendant] acted in a manner that affected her in the same way that it affected other similarly situated employees. More importantly, my role at this stage of the proceedings is not to weigh the merits of conflicting factual issues undergirding the claims."); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 65 (E.D. Pa. 2009) ("Defendant has provided affidavits from putative class members that directly refute Plaintiff's allegations and detail the individualized circumstances of each person as to their experience with managers.  While this evidence may be significant after discovery and during step two of the process, at this stage, it does not compel us to deny preliminary certification.") (citation omitted); Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) ("Defendant submits detailed declarations and information concerning its New Holland facility purporting to show that the potential plaintiffs are not similarly situated to the representative Plaintiffs.  While this information may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question.").

Accordingly, Defendant's declarations can be considered at the second stage of certification—not at this time.

### E.  Defendant's Cited Authority is Unavailing

The authority Defendant submits to argue against certification is unconvincing.  For example, in Langlands v. JK & T Wings, Inc., the plaintiffs sought certification based upon two declarations submitted by employees that failed to provide an estimate of the amount of time

employees spent performing untipped tasks or how regularly untipped labor was assigned.  No. 15-13551, 2016 WL 4073548, at *2 (E.D. Mich. Aug. 1, 2016).  Due to these deficiencies, the Langlands court concluded that pay stubs, a duties checklist from one location, and a copy of a handbook did not support nationwide certification.  Here, Plaintiffs not only estimate how much of their work week they spend performing untipped labor, they describe discrete times—before the restaurant is open to customers and during closing—where untipped tasks were assigned by management.  Defendant has also admitted that each restaurant assigns similar types of side work to its servers no matter the location.

Carey v. 24 Hour Fitness USA, Inc., is also distinguishable.  No. 10-3009, 2012 WL 4857562 (S.D. Tex. Oct. 11, 2012).  There, the federal district court in Texas applied a conditional certification standard not applicable within the Third Circuit. According to the court, the plaintiff (a membership counselor) was required to show "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." Carey, 2012 WL 4857562, at *1 (citation omitted). The court also considered individualized inquires—a factor not considered here—and denied conditional certification because "the analysis would require an individualized assessment." Id. at *2.

Last, Defendant cites Reed v. Empire Auto Parts, Inc., No. 13-5220, 2015 WL 761894 (D.N.J. Feb. 23, 2015), a case brought by a delivery driver alleging underpayment due to working during meal breaks.  Reed is also unavailing.  The named plaintiff in Reed was uncertain about the claims he was alleging, and the court determined the policy the plaintiff alleged "relies [on]

assumed facts rather than the requisite factual nexus." Id. at *6-7.  As demonstrated by Plaintiffs, that is not the case here.

### F.  Plaintiffs' Overtime Claims Should Also be Conditionally Certified

Flowing from Plaintiffs' minimum wage claims are violations of the FLSA's overtime requirements.  Due to Defendant's failure to pay Plaintiffs and other servers the required minimum wage, they, in turn, were not paid correctly for overtime.  (ECF No. 69, Am. Compl. at p. 3.)

When Plaintiffs and other servers worked over 40 hours in a week, they should have received "time and a half" their regular rate of pay for each hour worked over 40.  However, because their regular rate was not properly calculated due to the unpaid overtime, neither were their overtime wages; they were not paid "time and a half" at the properly calculated rate. Assuming Plaintiffs and the collective prevail on their minimum wage claims, any overtime violations at that point would be easily detected from the pay records.  Defendant does not dispute certification with respect to overtime in its opposition. Thus, conditional certification is warranted.

## II.    DEFENDANT'S JURISDICTION ARGUMENTS SHOULD BE REJECTED

Despite conceding personal jurisdiction or otherwise waiving the defense, Defendant urges this Court to upend decades of FLSA jurisprudence by extending the holding of Bristol-Myers Squibb Co. v. Superior Court of California to collective actions.  137 S. Ct. 1771 (2017).  In Defendant's eyes, Bristol-Meyers divests this Court of jurisdiction over servers who did not work for Defendant in Pennsylvania.  The Court should reject such a radical change to the FLSA and side with the majority of the cases that hold Bristol-Meyers does not interfere with the claims of opt-in Plaintiffs who worked for Defendant in states other than the forum state.

### A.  Defendant Has Conceded or Otherwise Waived its Personal Jurisdiction Defense

Defendant's jurisdiction argument is undercut by several litigation decisions it made in this case.  First, on August 29, 2018, Defendant moved to transfer this action from the U.S. District

Court for the District of Maryland (where Plaintiffs originally filed their complaint) to this federal court in Pennsylvania. (See generally Def.'s Mot. Transfer, ECF No. 12-1.) As Defendant acknowledged in its motion to transfer, at the time of its motion, only two named plaintiffs worked in Pennsylvania, and one in Virginia. (Id. at 2.) If Defendant genuinely believed the argument it advances in its opposition to Plaintiffs' motion for conditional certification—that the Court lacks "personal jurisdiction over P.F. Chang's regarding the FLSA collective action for servers who did not work in the commonwealth of Pennsylvania"—it would not have sought to transfer this action to Pennsylvania because one of the three named plaintiffs never worked in that state. Instead, it would have moved to transfer the case to Arizona, where it maintains its principal place of business, or in Delaware, where it is incorporated. (See Def.'s Opp. Plfs.' Mot. Conditional Cert., ECF No. 76 at 10-11 (Defendant suggesting that the Court would have general jurisdiction over P.F. Chang's in Arizona or Delaware.) In other words, Defendant chose this jurisdiction knowing full well that Plaintiffs would eventually move for conditional certification during the litigation. And, significantly, Defendant specifically *admitted* to personal jurisdiction in this district in its motion to transfer, despite one of the three named plaintiffs never working in Pennsylvania. (See Def.'s Mot. Transfer, ECF No. 12-1 at 4 ("Plaintiffs could have brought their claims in the United States District Court for the Eastern District of Pennsylvania, where jurisdiction exists and venue is proper . . . P.F. Chang's is subject to personal jurisdiction in the Eastern District of Pennsylvania.") Notably absent from Defendant's motion to transfer was any suggestion that the Pennsylvania court lacked jurisdiction over out-of-state Plaintiffs.

Second, Defendant stipulated to Plaintiffs amending their complaint to add Maryland class claims and to include Grace Castro as a named Plaintiff and proposed class representative for the proposed Maryland class. (Joint Stipulation Amend Compl., ECF No. 68 at 2.) Plaintiff Castro

worked for Defendant in Maryland, yet Defendant agreed to include her in the case as a named plaintiff without raising any personal jurisdiction concerns with respect to her in the stipulation or in a motion to dismiss. In fact, Defendant admitted in its Answer to Plaintiffs' Amended Complaint that it "does not dispute personal jurisdiction as to the individual claims of Plaintiffs Belt, Council, Castro, or Harris." (ECF No. 71, Answer Amended Compl. at ¶ 30.) Defendant, therefore, is bound by these admissions and cannot change its tune now. See Sunlight Elec. Contracting Co., Inc. v. Turchi, 918 F. Supp. 2d 392, 396 n.3 (E.D. Pa. 2013) ("It is well-settled that judicial admissions, or factual assertions in a party's pleadings, are binding on the party asserting them." (citing Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir.1972)).

Third, Defendant moved for judgment on the pleadings[4] on January 15, 2019, and failed to raise any personal jurisdiction defenses as to any named plaintiffs or the proposed collective. (See generally, Def.'s Mem., ECF No. 37-1). Under Fed. R. Civ. P. 12(h), a party waives its personal jurisdiction defense by omitting it from a motion made under Rule 12. Under the rule, aside from exceptions not applicable here, "a party [may not make] a motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2), (h)(1). Notably, at the time Defendant filed its motion for judgment on the pleadings, four opt-in Plaintiffs had joined the case, and at least two have testified that they did not work for Defendant in Pennsylvania. (See Ensalaco Notice of Consent, ECF No. 29-1, dated Nov. 14, 2018; Ensalaco Decl., ECF No. 73-5 at ¶ 2 (worked in Ohio); Castro Notice of Consent, ECF No. 31-1, dated Nov. 20, 2018; Castro Decl., ECF No. 73-5 at ¶ 2 (worked in Maryland); Shelton Notice of

---

[4] Defendant titled the motion a motion for summary judgment, but the Court noted that it was more appropriately a motion for judgment on the pleadings. (See ECF No. 56, Memorandum dated Aug. 15, 2019 ("Because no discovery has been conducted, and because P.F. Chang's asks the Court to determine only whether Plaintiffs may proceed based on the legal theory in their Complaint, I will consider P.F. Chang's Motion as a motion for judgment on the pleadings.")

Consent, ECF No. 31-2, dated Nov. 20, 2018; Murphy Notice of Consent, ECF No. 34-1, dated Jan. 7, 2019.)  Defendant's personal jurisdiction arguments related to opt-in Plaintiffs were available to it (based on its own records that indicate where its servers worked) at the time it moved for judgment on the pleadings, and accordingly, must be deemed waived under Fed. R. Civ. P. 12(h).  See T.J. McDermott Transp. Co., Inc. v. Cummins, Inc., No. 14-4209, 2018 WL 355139, at *3 (D.N.J.  Jan. 9, 2018) (concluding that defendant waived personal jurisdiction arguments by failing to include them in an earlier Rule 12 motion to strike); Emekekwue v. Offor, No. 11-1747, 2012 WL 5249414, at *4 (M.D. Pa Oct. 24, 2012) (same).

Despite transferring this case to this jurisdiction, admitting to personal jurisdiction with respect to all four named plaintiffs' claims, or otherwise waiving its personal jurisdiction defenses, Defendant now claims that other than Named Plaintiffs Council and Harris (who worked for Defendant in Pennsylvania), "all current named plaintiffs and opt-ins have asserted that they worked only in states outside of Pennsylvania, and thus these individuals will be unable to establish the necessary nexus between the wages in dispute in the FLSA claims and conduct by P.F. Chang's within Pennsylvania."  (Def.'s Opp. Plfs.' Mot. Conditional Cert., ECF No. 76 at 13.)  The Court must reject Defendant's personal jurisdiction arguments as to Named Plaintiffs Belt and Castro, and as to the opt-in and putative opt-in plaintiffs.  Given Defendant's positions taken thus far, Defendant should not be permitted to use personal jurisdiction as a tactic to defeat conditional certification.

## B. The Court Should Not Apply a Personal Jurisdiction Analysis to Opt-in Plaintiffs in an FLSA Collective Action

Notwithstanding Defendant's concession and waiver of personal jurisdiction, it maintains that under the FLSA—a remedial statute—individuals who worked outside of the state where the case is venued (here, Pennsylvania) "will be unable to establish the necessary nexus between the

wages in dispute and conduct by P.F. Chang's within Pennsylvania."  (Def.'s Opp. Plfs.' Mot.

Conditional Cert., ECF No. 76 at 13.)  But extending the Court's personal jurisdiction analysis to

opt-in plaintiffs is contrary to the FLSA's text and Congress's intent in enacting its collective

action mechanism.  First, the FLSA provides:

> An action to recover liability [for FLSA violations] may be maintained against any
> employer (including a public agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.

29 U.S.C. § 216(b).  The statute in no way limits claims to in-state plaintiffs.  See id.; see also

Swamy v. Title Source, Inc., 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017.)

When Congress amended the Act to include the collective action mechanism, it did so with

two primary goals in mind: (1) lowering individual costs to vindicate rights by the pooling of

resources; and (2) the efficient resolution in one proceeding of common issues of law and fact

arising from the same alleged discriminatory activity.  See Hoffmann-La Roche Inc. v. Sperling,

493 U.S. 165, 170 (1989).  Despite these dual goals, Defendant implicitly advocates for duplicative

lawsuits even though the named plaintiffs, opt-in Plaintiffs and the putative collective share the

same job duties, are subject to the same company-wide policies, and allege the same FLSA

violations as servers working for Defendant in the 30 states Plaintiffs seek to certify.  As Defendant

would have it, instead of one nationwide FLSA collective, Plaintiffs' claims should be litigated in

30 separate states.  Fracturing this lawsuit is contrary to the text of the FLSA and would erase the

efficiency goals the statute is intended to advance.

Since Bristol-Myers was decided, courts have rejected the same arguments Defendant

makes here.  In Seiffert v. Qwest Corp., for example, the defendant moved to dismiss out-of-state

opt-in plaintiffs, or, in the alternative, transfer the case to a district where defendant had general

personal jurisdiction.  2018 WL 6590836, at *1 (D. Mont. Dec. 14, 2018).  The defendant argued

that pursuant to <u>Bristol-Myers</u>, the court could not exercise personal jurisdiction over out-of-state

opt-in plaintiffs' claims because those opt-in plaintiffs resided and worked outside of Montana,

where the case was venued. The <u>Seiffert</u> court correctly pointed out that unlike the claims in

<u>Bristol-Myers</u>, the instant claims arose "from a federal statute designed to address employment

practices nationwide," and "[t]he FLSA does not limit claims to in-state plaintiffs." <u>Id.</u> at *2 (citing

to 29 U.S.C. § 216(b).)  The court further determined that "<u>Bristol-Meyers</u> does not divest the

Court's personal jurisdiction over [the plaintiff's] 'similarly situated' class under the FLSA,

regardless of where the Opt-in Plaintiffs may have suffered the alleged injury.  Nothing in the plain

language of the FLSA limits its application to in-state plaintiffs' claims."  <u>Id.</u> at *3 (citing 29

U.S.C. § 216(b)).

 The defendant in <u>Seiffert</u> next argued that because each opt-in plaintiff becomes a "party

plaintiff" upon joining pursuant to <u>Campbell v. City of Los Angeles</u>, 903 F.3d 1090, 1104 (9th

Cir. 2018), then each opt-in plaintiff must possess personal jurisdiction.  The <u>Seiffert</u> court rejected

this argument, too, and distinguished the <u>Campbell</u> decision as analyzing the role of opt-in

plaintiffs in the decertification context, whereas the present case had not yet reached the notice

phase.  The court concluded by stating "No FLSA collective action case ever could reach the

certification issue if the district court had to evaluate whether it possessed personal jurisdiction

over each new opt-in plaintiff."  <u>Id.</u> at *4; <u>see also</u> <u>Swamy,</u> 2017 WL 5196780, at *2 (declining to

extend <u>Bristol-Myers</u> to FLSA collective actions, noting it "would splinter most nationwide

collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy

of FLSA collective actions as a means to vindicate employees' rights.  This result is not mandated

by <u>Bristol-Myer</u>.")

Indeed, district courts in Pennsylvania, and other district courts within the Third Circuit, have a long and consistent history of exercising specific personal jurisdiction over nationwide collectives.  See, e.g., Hively v. Allis-Chalmers Energy, Inc., No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013); Sabol v. Apollo Grp, Inc., No. 9-3439, 2010 WL 1956591 (E.D. Pa. May 12, 2010); In Re: Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig., MDL No. 2056, 2010 WL 3447783 (W.D. Pa. Aug. 13, 2010); Garcia v. Nunn, No. 13-6316, 2016 WL 1169560, at *3-4 (E.D. Pa. Mar. 25, 2016) (conditionally certifying nationwide FLSA collective based on Plaintiff's declaration describing conditions in five states); Rocha WL 3077936, at * 8 (citing efficiency goals of the FLSA in certifying nationwide collective action); Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000, at *5 (D.N.J. Nov. 20, 2012) (finding certification of nationwide FLSA collective appropriate); Jones v. Alliance Inspection Mgmt., LLC, No. 13-1662, 2014 WL 1653112, at *4 (W.D. Pa. Apr. 24, 2014) (same); Given v. Love's Travel Stops & Country Stores, Inc., No. 17-1266, 2018 WL 925996, at *1 (M.D. Pa. Feb. 16, 2018).  District courts within Pennsylvania have had a long history of managing nationwide collective actions. There is simply no reason to disturb this precedent.

## C.  **Bristol-Meyers is Not Controlling, Nor Did it dramatically Change Class or Collective Action Litigation**

Defendant's attempt to inject the Bristol-Meyers holding into the FLSA context should be rejected. No circuit court, including the Third Circuit, has addressed the impact of Bristol-Myers on FLSA collective action litigation.  This Court should respectfully follow the majority of the district courts that have decided this issue and reject the application of Bristol-Myers (a case involving state law claims in state court and in a mass tort context) to this case (involving federal claims in federal court and in an opt-in collective context) on several grounds.

16

First, the U.S. Supreme Court specifically excluded Fifth Amendment due process concerns from its holding in Bristol-Myers, and thus, the decision is inapplicable to the present case.  The Bristol-Myers Court stated, "*[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court*."  Bristol-Myers, 137 S. Ct. at 1783–84 (emphasis added).  In Justice Sotomayor's dissent, she argued that the majority's opinion "will make it profoundly difficult for plaintiffs who are injured in different States by a defendant's nationwide course of conduct to sue that defendant in a single, consolidated action," though plaintiffs in that case might be able to "bring a single suit in federal court."  Id. at 1789 (Sotomayor, J., dissenting).  This matters because personal jurisdiction in federal court operates in a materially different way than personal jurisdiction in state court.

As described above, the Supreme Court's analysis in Bristol-Myers centered around the due process under the Fourteenth Amendment, which guarantees due process of law against "any State."  See U.S. Const. amend. XIV.  A different amendment—the Fifth Amendment—deals with due process of law as against the federal government.  See U.S. Const. amend. V.  Under the Fourteenth Amendment, the Bristol-Myers Court explained that due process interests "encompass[] the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. . . .  States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts."  Bristol-Myers, 137 S. Ct. at 1780.  In other words, "territorial limitations on the power of the respective States" mattered to the Supreme Court because the case before it dealt with a state court deciding state claims involving in-state and out-of-state plaintiffs.  See id. at 1778, 1780.  Due process under the Fifth Amendment for federal courts deciding federal claims does not raise the same concerns.

17

Congress may ignore state borders and enact statutes that apply nationally.  See Fed. R. Civ. P. 4. And importantly, as the <u>Bristol-Myers</u> Court acknowledged when it excluded Fifth Amendment questions from its holding, it cited a footnote in <u>Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.</u>, which stated that the Supreme Court has yet to consider the constitutional issues raised by the theory that a federal court may "exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits."  484 U.S. 97, 102 n.5 (1987).  As the Supreme Court signaled, an entirely different analysis exists for Fifth Amendment due process concerns, and this Court should not read them into the <u>Bristol-Myers</u> decision.

Moreover, the factual circumstances in <u>Bristol-Myers</u> cannot be analogized to FLSA collective actions.  The <u>Bristol-Myers</u> Court faced a mass tort action involving state law claims and in state court.  <u>See id</u>. at 1778.  By contrast, the present case deals with federal claims, a collective action mechanism, and federal court.  As the <u>Swamy</u> court stated,

> Unlike the claims at issue in <u>Bristol-Myers</u>, we have before us a federal claim created by Congress specifically to address employment practices nationwide. Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs.

<u>Swamy</u>, 2017 WL 5196780, at *2; <u>see also</u> <u>Mason v. Lumber Liquidators, Inc.</u>, No. 17-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019), <u>aff'g order</u> 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019) ("Unlike the mass-tort state claims at issue in <u>Bristol-Myers</u>, the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide.").

Other courts have similarly rejected the applicability of <u>Bristol-Myers</u> to FLSA collective actions.  <u>See</u> <u>Hunt v. Interactive Med. Specialists, Inc.</u>, No. 19-13, 2019 WL 6528594, at *3 (N.D.W. Va. Dec. 4, 2019) ("[T]he Court concludes that <u>Bristol-Myers Squibb's</u>  holding does not

extend to collective actions under the FLSA."); Mason, 2019 WL 2088609, at *6 ("This Court finds more persuasive the reasoning of those courts that have declined to apply the Supreme Court's reasoning in Bristol-Meyers to FLSA collective actions."), aff'd, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); Meo v. Lane Bryant, Inc., No. 18-6360, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) ("As a remedial statute, Congress intended for nationwide FLSA collective actions. Applying Bristol-Meyers to FLSA collective actions would countermand that purpose."); Garcia v. Peterson, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018); Thomas v. Kellogg Co., 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (concluding that it is "not at all clear that Bristol Myers even applies to this case, filed in federal district court" and denying motion to dismiss out-of-state opt-ins' claims).  As explained above, an FLSA collective action includes a mechanism to "opt in," regardless of where the complaint is filed, and in the Third Circuit, the named plaintiff must show that named plaintiffs and opt-in plaintiffs are similarly situated to litigate collectively.  See 29 U.S.C. § 216(b); Zavala, 691 F.3d 527, 536.  Thus, the mass tort context in Bristol-Myers is an improper comparator to an FLSA collective action.

Finally, the U.S. Supreme Court reasoned that it was applying "settled principles of specific jurisdiction" and did not intend to change the legal landscape of group litigation.  See Bristol-Myers, 137 S. Ct. at 1781.  If this Court adopted Bristol-Myers to the FLSA context, it would most certainly change the legal landscape of group litigation and would "splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights."  Swamy, 2017 WL 5196780, at *2.  Again, the Bristol-Myers Court did not contemplate this result and left the Fifth Amendment to be addressed for another day.  This court should therefore follow its well-reasoned precedent and permit this case to proceed as nationwide collective action.

### D. Defendant's Legal Authority is Inapposite

The cases that Defendant primarily relies upon—Szewczyk v. United Parcel Service, Inc.; Chavira v. OS Restaurant Services, LLC,; Rafferty v. Denny's, Inc.; and Roy v. FedEx Ground Package System, Inc.—misapplied Bristol-Myers and ignored the FLSA's purpose and the collective action process. (See Def.'s Opp. Plfs.' Mot. Conditional Cert., ECF No. 76 at 16–17.)

Szewczyk does not support limiting certification to only servers who worked in Pennsylvania, as the court did not analyze whether it had personal jurisdiction over opt-in Plaintiffs. In assessing a motion to dismiss, Szewczyk agreed with the body of caselaw holding that the personal jurisdiction inquiry for an FLSA claim is limited to the named plaintiff. Id. at *8. It then determined that the plaintiffs made no effort to allege facts that would support the court's exercise of personal jurisdiction over the defendant in connection with the named plaintiff who did not work in the forum state. Id. Here, however, Defendant conceded personal jurisdiction as to all four named plaintiffs' claims, and accordingly, no personal jurisdiction defense remains. (ECF No. 71, Answer Amended Compl. at ¶ 30.) ("P.F. Chang's does not dispute personal jurisdiction as to the individual claims of Plaintiffs Belt, Council, Castro, or Harris.")

The other cases cited by Defendant fare no better. In Chavira v. OS Rest. Services, LLC, No. 18-10029, 2019 WL 4769101 (D. Mass. Sept. 30, 2019), the court sided with the minority of authority that believes the reasoning in Bristol-Meyers applies to FLSA claims. In adopting this approach, the court ignored the FLSA's purpose of remedying illegal employment practices nationwide, a compelling distinction from the mass tort context of Bristol-Meyers. Roy v. FedEx Ground Package System, Inc., 353 F. Supp. 3d 43 (D. Mass. 2018), also premises its conclusion on a flawed understanding of the purpose of the FLSA. By equating a FLSA collective action with a mass tort claim, Roy neuters the FLSA's prophylactic purpose of remedying illegal employment practices that occur across state lines. The Court should reject the faulty reasoning adopted in

these cases.

Rafferty v. Denny's Inc., 2019 WL 2924998 (N.D. Ohio July 8, 2019) is also premised on a flawed understanding of the FLSA and misstates the appellate court it relies upon. Rafferty cites to O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 584 (6th Cir. 2009), abrog. on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016), for the proposition that opt-in plaintiffs are more akin to mass action plaintiffs than to Rule 23 class members. See Rafferty v. Denny's Inc., 2019 WL 2924998, at *6 n.11 (N.D. Ohio July 8, 2019). But O'Brien expressly distinguished the FLSA's "similarly situated" standard for collective actions as being "less stringent than Rule 20(a)'s requirement that claims arise out of the same action or occurrence for joinder to be proper." 575 F.3d at 584.

## III.    PLAINTIFFS' PROPOSED MANNER OF NOTICE SHOULD BE APPROVED

While Defendant does not oppose Plaintiffs' proposed form of notice, it takes issue with Plaintiffs' proposed manner of notice, but offers no compelling justification for its objections. Instead, it cites dated caselaw and offer arguments that, if accepted, would thwart the "main purpose" of the first step of conditional certification, which "is to provide notice of the lawsuit to potential class members and allow them the opportunity to opt-in to the action." Sanchez v. Santander Bank, N.A., No. 17-5775, 2019 WL 6050738, at *2 (D.N.J. Nov. 15, 2019) (quoting Kaiser v. Daiichi Sankyo, Inc., No. 11-2414, 2012 WL 13042875, at *2 (D.N.J. Apr. 27, 2012)). The Court should authorize dissemination of notice according to Plaintiffs' proposed parameters.

### A.  The Court Should Authorize Electronic Notice in Addition to U.S. Mail

Distributing notice via U.S. Mail remains an important form of notice distribution. But electronic forms of communication are more commonly utilized today and have greater utility in reaching potential class members to inform them about this collective action. See In re Deloitte &

Touche, LLP Overtime Litig., No. 11-2461, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (stating that "communication through email is [now] the norm"). For these and other reasons, electronic dissemination of notice has been increasingly authorized in the Third Circuit and beyond. See, e.g., Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598, 611 (E.D. Pa. 2019) (approving of email notice); Sanchez, 2019 WL 6050738, at *3 (same); Harris v. Med. Transp. Mgmt., Inc., 317 F. Supp. 3d 421, 426 (D.D.C. 2018) (authorizing text message notice dissemination); Irving v. Destination Wild Dunes Mgmt., Inc., 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court."); Shiqiang Gao v. A Canaan Sushi Inc., No. 18-6442, 2019 WL 6724359, at *4 (S.D.N.Y. Dec. 10, 2019) (permitting notice to be distributed via email, text messaging, and social media); Murillo v. Berry Bros Gen. Contractors Inc., No. 18-1434, 2019 WL 4640010, at *6 (W.D. La. Sept. 23, 2019) ("The Court will allow Plaintiff to provide notice by all requested methods, U.S. Mail, email and text message."); Bernardez v. Firstsource Sols. USA, LLC, No. 17-613, 2019 WL 4345986, at *9 (W.D. Ky. Sept. 12, 2019) (allowing plaintiffs to send notice via U.S. Mail, email, and text message).

Moreover, in industries of high turnover, like the restaurant industry, electronic forms of notice dissemination are eminently reasonable. See E.E.O.C. v. Brinker Intern. Payroll Co., L.P., No. 5-1063, 2007 WL 775584, at *2 (E.D. Wis. Mar. 9, 2007) ("In particular, turnover in the restaurant industry is high, often exceeding 100% per year"); Martin v. Sprint/united Mgmt. Co., No. 15-5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (granting text message notice due to high turnover rate among employees); Bhumithanarn v. 22 Noodle Market Corp., No. 14-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and

efficient means of communicating with many prospective members of this collective action."); Kidwell v. Ruby IV, LLC, No. 18-2052, 2019 WL 219850, at *5–6 (E.D. La. Jan. 16, 2019) (authorizing notice to be disseminated via text message in part due to the high turnover in the restaurant industry); Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18-12220, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (noting that distributing notice electronically is "ordinarily approved, especially where, as here, the nature of the employer's business facilitate[s] a high turnover rate among employees" (quotation marks and citation omitted; alteration in original)).

Unlike mailing addresses, cellular telephone numbers and email addresses reside with the individual and do not change when someone moves residences. Electronic notice ensures that a member of the putative collective will receive notice of this lawsuit no matter how many times their mailing address has changed. Since the purpose of this stage of the litigation is to inform members of the putative collective about this lawsuit, electronic methods of communication help ensure that this goal will be met.

### B.  The Benefits of Issuing Notice via Text Message Far Outweigh the Risks

In resisting Plaintiffs' reasonable request to disseminate notice electronically, Defendant argues that privacy concerns militate against sending notice via text message. Courts, however, have justified such limited intrusion due to the benefit it provides—giving potential plaintiffs notice of a possible wage claim. Harris v. Med. Transp. Mgmt., Inc., 317 F. Supp. 3d 421, 426 (D.D.C. 2018).

The one case cited by Defendant in support of its argument, Atis v. Freedom Mort. Corp., No. 15-3424, 2016 WL 7440465, at *1 (D.N.J. Dec. 27, 2016), involved employees with the title of "Assistant Vice President of Sales." In this case, the collective Plaintiffs seek to certify are restaurant servers, which is likely comprised of largely transient individuals that justify notice

being disseminated via text message.  See Fuentes v. Compadres, Inc., No. 17-1180, 2018 WL 2126840, at *7 (D. Colo. May 9, 2019) (finding that transient nature of restaurant workers justified electronic dissemination of judicial notice form).  Distributing notice via text message is consistent with the digital age, and the minor intrusion of a single text message is wholly justified by the potential of notifying an individual that they may have a minimum wage claim against their current of former employer.  See Mraz v. Aetna Life Ins. Co., No. 12-805, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014) ("[W]e live in a time when all manner of commercial transactions are routinely cemented by electronic submission.").

Defendant argues that if the Court does allow Plaintiffs to distribute notice via text message, all that should be sent is a link to an electronic copy of the notice.  (Def.'s Opp. Plfs.' Mot. Conditional Cert.,  ECF No. 76. at 20.)  This request should be rejected.  Even the least tech-savvy individuals know that it is not wise to click on a link sent by an unknown sender.  Without accompanying information, it is very likely that the message will be viewed as either junk or potentially malicious, severely driving down the number of people who follow the link to learn about this case.  Sending the link with the accompanying language Plaintiffs propose allows a recipient to learn that the message is genuine and that they may be eligible to participate in a case to collect unpaid minimum wage.  The Court should permit Plaintiffs to disseminate notice via text message in the form Plaintiffs' propose.

### C.  A Reminder Substantially Ensures that the Collective Receive Notice of this Lawsuit

Defendant opposes Plaintiffs' request to send a reminder notice because it is unnecessary, redundant and likely to cause confusion.  Not so.

Reminder notices serve the important function of honoring the broad remedial purpose of the FLSA by further ensuring that potential class members receive notice of their rights and potential claims.  For this and other reasons, Courts in the Third Circuit and beyond regularly

authorize the sending of a reminder notice.  See Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019) (approving reminder notice); Porter v. Merrill Lynch Pierce Fenner & Smith, Inc., No. 17-8043, 2018 WL 5874094, at *5 (D.N.J. Nov. 9, 2018) (authorizing the sending of a reminder notice halfway through the notice period); Archer v. Defenders, Inc., No. 18-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018) ("Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant."); Sanchez, 2019 WL 6050738, at *3 ("The Court will also permit a reminder notice to be sent by mail and email halfway through the notice period."); Gervasio v. Wawa Inc., No. 17-245, 2018 WL 385189, at *7 (D.N.J. Jan. 11, 2018) (same).

The Court should not follow the outlier authority supplied by Defendant, Clarke v. Flik International Corp., which denied sending a reminder notice.  No. 17-1915, at *9 (D.N.J. Aug. 16, 2018).  As explained in Plaintiffs' opening brief, a reminder notice serves the important function of reducing the number of collective members who join the lawsuit after the notice period has closed.  (Pls.' Mem. at 17–18, ECF No. 73-1.)  Sending a reminder notice ensure that an individual who may have initially overlooked the notice gets another opportunity to learn about and join the case.  Moreover, since Plaintiffs intend to send a reminder only to those who have yet to opt-into the case, there is no risk that the reminder will cause confusion.  The Court should agree with the majority of the authority and permit Plaintiffs to send a reminder postcard to ensure that members of the putative receive accurate and timely information about this lawsuit.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court conditionally certify the proposed collective and approve Plaintiffs' proposed notice plan.

Date:   December 26, 2019

**NICHOLS KASTER, PLLP**

s/ Reena I. Desai
Reena I. Desai, MN Bar # 0388311*
Jay E. Eidsness, MN Bar # 0395347*
4600 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Telephone (612) 256-3244
Email: rdesai@nka.com
*Admitted pro hac vice*

**LAW OFFICES OF PETER T. NICHOLL**

Benjamin L. Davis, III
Charles Center South
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 244-7005
Facsimile: (410) 244-8454
Email: bdavis@nichollaw.com

**SCHALL & BARASCH**

Patricia A. Barasch
110 Marter Ave #302
Moorestown, NJ 08057
Telephone: (856) 914-9200
Email: pbarasch@schallandbarasch.com

ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE COLLECTIVE AND
CLASS ACTIONS

26

**CERTIFICATE OF SERVICE**

I hereby confirm that a true and correct copy of the above was filed electronically on

December 26, 2019 pursuant to the service requirements of the ECF/CM for the Eastern District

of Pennsylvania, which will notify all counsel of record.

s/ Reena I. Desai
Reena I. Desai
