**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN BELT, *et al.*, | : | |
| Plaintiffs. | : | CIVIL ACTION |
| | : | No. 18-3831 |
| v. | : | |
| | : | |
| P.F. CHANG'S CHINA BISTRO, | : | |
| INC., | : | |
| Defendant. | : | |

**July 8, 2020**                                                    **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiffs Steven Belt, Laura Council, Grace Castro, and James Harris, on behalf of

themselves and all others similarly situated, bring this collective action and class action against

Defendant P.F. Chang's China Bistro, Inc. ("P.F. Chang's"), alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S.

§ 333.101 *et seq.*, the Maryland Wage Payment and Collection Law,  Md. Code Ann. Lab. &

Empl. § 3-501 *et seq.*, and the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. §

3-401 *et seq.*[1]

Plaintiffs have been employed as servers at P.F. Chang's restaurants.  They contend that

P.F. Chang's violates the FLSA by paying servers a "tip credit" wage, rather than the standard

minimum wage,[2] when servers perform (1) non-tipped tasks unrelated to their tipped occupation,

---

[1] I exercise subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

[2] The FLSA allows employers to pay a "tipped employee" a cash wage of $2.13 per hour provided that the employee's tips make up the difference between the $2.13 cash wage and the current federal minimum wage of $7.25 an hour.  *See* 29 U.S.C. § 203(m); *see also* 29 U.S.C. § 206(a)(1)(C) (setting the federal minimum wage at $7.25 an hour); 29 C.F.R. § 531.50 (providing that the cash wage is $2.13 an hour).  The difference between the cash wage and the federal minimum wage is known as the "tip credit." *See* 29 C.F.R. § 531.56(d).

and (2) non-tipped tasks related to their tipped occupation for more than 20 percent of the workweek.[3]  Consequently, Plaintiffs contend that as a result of P.F. Chang's failure to correctly calculate their regular rate of pay, it also violates the FLSA by failing to correctly pay them for overtime—the "time and a half" of their regular rate for every hour they worked over forty hours in a week.

Pursuant to the FLSA's collective action provision, 29 U.S.C. § 216(b), Plaintiffs move for conditional certification of this matter as an FLSA collective action and court-authorized notice.  Specifically, Plaintiffs move for an order: (1) granting conditional certification of a class[4] comprised of all servers who worked at P.F. Chang's in Alabama, Arkansas, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin[5] in the last three years and 288 days (9.5 months);[6] (2) compelling P.F. Chang's to provide Plaintiffs' attorneys with the names, last known contact information, and dates of employment for all potential class members; (3) permitting Plaintiffs' attorneys to send court-authorized notice to all potential class members; and (4) providing for a 60-day period from the

---

[3] The parties frequently refer to these non-tipped tasks as side work.  The Court will also use this term.

[4] Consistent with the nomenclature used in this Circuit, the Court will refer to a group of potential opt-in plaintiffs as the "collective action class" or the "class."  *See Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 226 (3d Cir. 2016).

[5] Plaintiffs originally included servers in New York in the class.  After P.F. Chang's objected to their inclusion, however, Plaintiffs removed their request to include New York servers in the class.  Pls.' Reply 2 n.1.

[6] Three years is the maximum statute of limitations under the FLSA and P.F. Chang's agreed to approximately 9.5 months (288 days) tolling to account for the time the parties spent briefing the motion for judgment on the pleadings and for the Court to rule on the motion.  Pls.' Mem. Supp. Mot. Conditional Certification 12 n.3.

date notices are mailed for potential class members to join this action by filing consents to sue

with the Court.  For the reasons discussed below, I will grant Plaintiffs' motion.[7]

## I. BACKGROUND

P.F. Chang's operates hundreds of restaurants throughout the United States.  Am.

Compl. ¶ 32.  At the time of the filing of the Complaint, Plaintiffs had been employed as servers

at various P.F. Chang's restaurants.[8]  Am. Compl. ¶¶ 17-20.

Plaintiffs were required to perform three different categories of work: tipped work,

untipped work related to their occupation as servers, and work unrelated to their occupation as

servers.[9]  Am. Compl. Intro. and Background.  Plaintiffs' tipped work included "serving food

and drinks to patrons," "wait[ing] on tables and describ[ing] daily specials," "regularly

check[ing] on patrons throughout their meal," and collecting payment from customers.  Am.

Compl. ¶ 34.  P.F. Chang's also required Plaintiffs to perform work that did not give them the

ability to earn tips because it "did not involve interacting with, nor serving food and beverages to

customers." Am. Compl. ¶ 35.  This untipped work included both tasks related to Plaintiffs'

employment as servers, and tasks unrelated to Plaintiffs' employment as servers.  The untipped

work included:

- Preparatory tasks, such as labeling sauces, preparing drink machines, filling sugar caddies, polishing dishes, and rolling silverware;

---

[7] Because Plaintiffs' proposed notice requires minor edits, the Court will confer with the parties and authorize these changes prior to distribution of the notice.

[8] Plaintiff Steven Belt worked at a P.F. Chang's in McLean, Virginia.  Am. Compl. ¶ 46.  Plaintiff Laura Council worked at P.F. Chang's locations in Warrington, Pennsylvania and Princeton, New Jersey.  Am. Compl. ¶ 47.  Plaintiff Grace Castro worked at a P.F. Chang's in Baltimore, Maryland.  Am. Compl. ¶ 48. Plaintiff James Harris worked at a P.F. Chang's in Pittsburgh, Pennsylvania.  Am. Compl. ¶ 49.

[9] This allegation leads to both Plaintiffs' minimum wage claims and Plaintiffs' overtime claims: Plaintiffs allege that because they were not paid at the correct minimum wage rate, their overtime wage rate was also incorrect. Am. Compl. ¶ 70.

- Sanitation and maintenance tasks, such as sanitizing the kitchen and dining area and bagging and taking out trash; and

- Cleaning tasks, such as cleaning tables and chairs, dusting, sweeping, and polishing.

Am. Compl. ¶¶ 36-38. Plaintiffs' schedules varied, but they routinely worked between twenty and fifty hours each week, in six- to ten-hour shifts. Am. Compl. ¶ 50.  During each shift, Plaintiffs spent approximately thirty to fifty percent of their time performing work that did not give them the opportunity to earn tips. Compl. ¶ 51.

Plaintiffs were paid at the tip-credit minimum wage rate—as opposed to the full minimum wage rate—for the entirety of the hours worked for P.F. Chang's.  Am. Compl. ¶¶ 42-45.  They were paid at the tip-credit rate for both their tipped and untipped work.  Am. Compl. ¶ 53.

## II. LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  The FLSA provides that employees may bring an action for specified violations of the FLSA on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b).  "A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp.*, 569 U.S. at 69.

The filing of a complaint containing FLSA collective action allegations "does not automatically give rise to the kind of aggregate litigation provided for in Rule 23.  Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).  Courts must determine "whether those who purport to join the collective action are 'similarly situated' as

intended by the statute." *Id.*  Because there are no formal procedural rules mandating how to accomplish this task, the Third Circuit follows a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA.  *Id.*; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).

"The first step, so-called conditional certification, requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).  The court applies a "fairly lenient standard" at this stage.  *Camesi*, 729 F.3d at 243.  "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id*.  The court does not evaluate the merits of a plaintiff's case when ruling on a motion for conditional certification.  *See, e.g.*, *Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 WL 1255713, at *4 (E.D. Pa. Mar. 31, 2016); *Pereira v. Foot Locker, Inc*., 261 F.R.D. 60, 63-64 (E.D. Pa. 2009).

Although this stage is known as "conditional certification," it "is not really a certification." *Zavala*, 691 F.3d at 536.  "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp.*, 569 U.S. at 75 (citation omitted).  "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle*, 842 F.3d at 224.

The second step in the two-step process is known as "final certification."  *Id.* at 226.

"[W]ith the benefit of discovery, 'a court following this approach then makes a conclusive

determination as to whether each plaintiff who has opted in to the collective action is in fact

similarly situated to the named plaintiff.'"  *Camesi*, 729 F.3d at 243 (quoting *Symczyk v. Genesis

HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66

(2013)).  "Being similarly situated . . . means that one is subjected to some common employer

practice that, if proved, would help demonstrate a violation of the FLSA."  *Zavala*, 691 F.3d at

538.  The Third Circuit "endorses an ad hoc approach to this analysis, considering all relevant

factors and making a determination on a case-by-case basis as to whether the named plaintiffs

have satisfied this burden by a preponderance of the evidence."  *Halle*, 842 F.3d at 226.

Unlike at the conditional certification stage, a district court's decision to grant or deny

final certification is not discretionary and must depend only on the court's factual findings as to

whether the plaintiffs are in fact similarly situated.  *Zavala*, 691 F.3d at 535.  If this factual

finding is made in the affirmative, the statute mandates that the district court grant final

certification.  *Id.*  ("We do not believe that the statute gives the district court discretion to deny

certification after it has determined that plaintiffs are similarly situated.").  If, however, the

collective action is decertified, the court will decertify the class, dismiss the opt-in plaintiffs

without prejudice and allow the named plaintiffs to proceed to trial.  *Halle*, 842 F.3d at 226.

## III. DISCUSSION

Plaintiffs move for conditional certification of a class comprised of all servers who

worked at P.F. Chang's in Alabama, Arkansas, Florida, Georgia, Idaho, Illinois, Indiana, Iowa,

Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri,

Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode

Island, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin in the last three years

and 288 days (9.5 months) and request court-authorized notice.  P.F. Chang's contends that

Plaintiffs' evidence does not support conditionally certifying a collective action.  Even if the

Court finds that conditional certification is proper, P.F. Chang's argues that the scope of the

collective action should be limited to named Plaintiffs and only those opt-in plaintiffs who

worked in restaurants in Pennsylvania because the Court lacks personal jurisdiction over P.F.

Chang's as to any opt-in servers who did not work in Pennsylvania.  Furthermore, P.F. Chang's

argues that, if the Court grants conditional certification, Plaintiffs' proposed manner of notice

should be significantly limited.

**A. Evidentiary Support for Conditional Certification**

Plaintiffs support their motion for conditional certification with the submission of eleven

declarations by named Plaintiffs and opt-in Plaintiffs who worked in seven different states.  *See*

Pls.' Mem. Supp. Mot. Conditional Certification (Pls.' Mem") Ex. 3.  In addition, they rely on the

deposition of Michael Gervais, a Senior Regional Vice of P.F. Chang's, as well as side work

sheets from P.F. Chang's that reflect the many tasks that servers must perform before, during,

and after their shifts.  *See* Pls.' Mem. Exs. 1, 2.

The evidence reveals that P.F. Chang's has a top-down corporate structure.  Regional

Vice Presidents report to the Chief Operating Officer who oversees restaurant operations and

makes sure that each restaurant is compliant with P.F. Chang's policies.  Pls.' Mem. Ex. 1

("Gervais Dep.") at 15:22-25, 16:19-23, 25:24-26:3.  The Market Partners oversee between six

and eleven restaurants and report directly to the Regional Vice Presidents.  *Id.* at 26:6-15.  The

Operating Partners oversee a single restaurant to ensure the restaurant operates smoothly and

report directly to the Market Partners.  *Id.* at 26:10-23.

Consistent with this top-down corporate structure, P.F. Chang's employees receive the same general training regardless of their location. *Id.* at 20:5-22:5. Five Regional Training Managers develop the training materials and oversee new restaurant openings. *Id.* at 17:1-12, 20:5-18. Regional Training Managers travel to new restaurant locations to train the staff on how to properly operate a P.F. Chang's restaurant. *Id.* at 21:13-18. They also train servers how to perform their jobs. *Id.* at 25:18-19. This is because "P.F. Chang's wants a guest who goes to a restaurant in Naples to have the same experience as in Pittsburgh." *Id.* at 63:25-64:3. It also means that a server trained at one P.F. Chang's location can go to another location without needing further training. *Id.* at 120:11-15. For instance, "[i]f you're a server for P.F. Chang's and you're leaving Miami and moving to Appleton, Wisconsin, you can transfer and be a server in Appleton." *Id.* at 120:11-13.

Not only do servers receive the same training, the same pay practices also apply to all servers. *Id.* at 150:22-151:6. Servers working in states that don't allow a tip credit wage receive the minimum wage plus the tips they receive. *Id.* at 151:2-6. Servers working in states that have a tip credit wage receive the tip credit wage plus the tips they receive. *Id.* at 150:23-151:1.

P.F. Chang's requires every server to perform side work. *Id.* at 56:5-25. "Side work are the duties, the tasks that a server will complete . . . over the course of the shift to make sure all the tools that [P.F. Chang's] needs to facilitate the guest experience are readily available." *Id.* at 56:12-17. "In most restaurants, there's a side worksheet posted on a wall somewhere . . . ." *Id.* at 106:6-7.

Plaintiffs declared that they were required to perform side work before the restaurant opened such as preparing the iced tea, coffee, and lemonade; preparing various sauces; refilling condiments such as salt, pepper, and soy sauce; rolling silverware; cutting fruit; preparing soups;

restocking server stations; and cleaning tasks such as sweeping, polishing plates, silverware, and glasses, and wiping down tables.  Pls.' Mem. Ex. 3.[10]  Plaintiffs were also required to complete side work throughout their shift such as busing their own tables; running dirty food platters, cups, and silverware through the dishwasher; polishing silverware and glasses; taking full garbage bags out to the dumpster; and restocking the server stations.  *Id.*[11]  Furthermore, Plaintiffs were required to perform side work before they concluded their shift such as cleaning and restocking the server stations; running dirty food platters to the back of the house and loading them into the dishwasher; restocking server stations; cleaning the soda, lemonade, tea, and coffee stations; cleaning tables and chairs; and taking trash out to the dumpster.  *Id.*[12]  In addition to the above described side work, servers had to perform weekly cleaning duties.  *Id.*[13] Lastly, servers who were assigned to close the restaurant had to perform extensive additional untipped duties.[14]

P.F. Chang's does not track the side work that servers perform before, during, and after their shift.  Gervais Dep. 158:19-159:2.  And P.F. Chang's does not pay servers who receive a tip

---

[10] *See* Butler Decl. ¶ 6; Ensalaco Decl. ¶ 6; Castro Decl. ¶ 6; Council Decl. ¶ 6; Belt Decl. ¶ 6; Harris Decl. ¶ 6; Tibai Decl. ¶ 6; Courtney Decl. ¶ 6; Bolanos-Blumenthal Decl. ¶ 6; Maculley Decl. ¶ 6; Stanley Decl. ¶ 6.

[11] *See* Butler Decl. ¶ 8; Castro Decl. ¶ 8; Council Decl. ¶ 8; Belt Decl. ¶ 8; Harris Decl. ¶ 8; Tibai Decl. ¶ 8; Courtney Decl. ¶ 8; Bolanos-Blumenthal Decl. ¶ 8; Maculley Decl. ¶ 8; Stanley Decl. ¶ 8.

[12] *See* Butler Decl. ¶ 7; Ensalaco Decl. ¶ 7 Castro Decl. ¶ 7; Council Decl. ¶ 7; Belt Decl. ¶ 7; Harris Decl. ¶ 7; Tibai Decl. ¶ 7; Courtney Decl. ¶ 7; Bolanos-Blumenthal Decl. ¶ 7; Maculley Decl. ¶ 7; Stanley Decl. ¶ 7.

[13] *See* Butler Decl. ¶ 9; Ensalaco Decl. ¶ 8; Castro Decl. ¶ 9 Council Decl. ¶ 9; Belt Decl. ¶ 9; Harris Decl. ¶ 9; Tibai Decl. ¶ 9; Courtney Decl. ¶ 9; Bolanos-Blumenthal Decl. ¶ 9; Maculley Decl. ¶ 9; Stanley Decl. ¶ 9.

[14] *See* Butler Decl. ¶ 10; Castro Decl. ¶ 10 Council Decl. ¶ 10; Belt Decl. ¶ 10; Harris Decl. ¶ 10; Tibai Decl. ¶ 10; Courtney Decl. ¶ 10; Bolanos-Blumenthal Decl. ¶ 10; Maculley Decl. ¶ 10; Stanley Decl. ¶ 10.

credit wage any differently for the time they spend performing side work.  *Id.* at 159:3-8.

Plaintiffs declared that during a typical shift they spent between 25% and 50% of their time

performing side work—time that they could not interact with customers and earn tips.  Pls.'

Mem. Ex. 3.[15]

In response to Plaintiffs' evidence, P.F. Chang's concedes that all servers were required

to do side work but points out that the amount of side work each server performs varies.  Def.'s

Resp. Ex. R ("Gervais Decl.") ¶ 5.  For instance, some locations require servers to begin thirty

minutes before the restaurant opens while other locations do not schedule servers until the

restaurant opens.  Gervais Dep. 46:21-25.  Even Plaintiffs' declarations demonstrate that the

amount of time they spent on side work before opening a restaurant varied from fifteen to ninety

minutes.  Pls.' Mem. Ex. 3.[16]  Most importantly, P.F. Chang's emphasizes that there is

competing evidence from two P.F. Chang's Regional Vice Presidents and multiple servers,

which demonstrates that servers spend under 20% of their working time performing side work.

*See* Def.'s Reply Exs. B-S.  P.F. Chang's also highlights that these servers who have declared

that they spend under 20% of their time on side work also do not know of any policy at P.F.

Chang's requiring servers to spend a certain amount of time on side work and they have never

been instructed to devote a specific amount of time to side work.  Def.'s Reply Exs. B-Q.

P.F. Chang's argues that Plaintiffs have not met their burden for conditional certification

because they have failed to identify a corporate-wide policy requiring servers to spend at least

---

[15] *See* Butler Decl. ¶ 11 (30-40%); Ensalaco Decl. ¶ 9 (30-40%); Castro Decl. ¶ 11 (33-40%) Council Decl. ¶ 11 (25%); Belt Decl. ¶ 11 (33%); Harris Decl. ¶ 11 (40-50%); Tibai Decl. ¶ 11 (30%); Courtney Decl. ¶ 11 (25%); Bolanos-Blumenthal Decl. ¶ 11 (25%); Maculley Decl. ¶ 11 (30%); Stanley Decl. ¶ 11 (50%).

[16] *See* Butler Decl. ¶ 6; Ensalaco Decl. ¶ 6; Castro Decl. ¶ 6; Council Decl. ¶ 6; Belt Decl. ¶ 6; Harris Decl. ¶ 6; Tibai Decl. ¶ 6; Courtney Decl. ¶ 6; Bolanos-Blumenthal Decl. ¶ 6; Maculley Decl. ¶ 6; Stanley Decl. ¶ 6.

20% of their time performing untipped side work.  Additionally, P.F. Chang's argues that the Court should deny conditional certification because determining whether any putative collective action class member was injured would require a highly individualized inquiry.

Although P.F. Chang's contends that Plaintiffs have not met the lenient standard for conditional certification, Plaintiffs have shown that all servers in the proposed class are required to perform side work, these servers receive the tip credit wage for the hours during which they perform side work, P.F. Chang's does not record the amount of time servers spend on side work, and the side work is relatively the same at all P.F. Chang's locations.  Eleven Plaintiffs declare that P.F. Chang's required them to spend 25% to 50% of their time performing side work.

Plaintiffs are not required to prove that P.F. Chang's had a written policy requiring them to spend at least 20% of their time on side work.  Rather, at the conditional certification stage, Plaintiffs are only required to make a "'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4).  "An unwritten policy or practice . . . may be actionable under the FLSA." *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010).  Plaintiffs have alleged that P.F. Chang's policy requiring them to perform side work resulted in them spending at least 20% of their time performing untipped work.  Although P.F. Chang's has presented competing evidence that some workers performed side work for less than 20% of their shift, "[t]he Court does not evaluate the merits of a case when ruling on a motion for conditional certification." *Viscomi*, 2016 WL 1255713, at *4.

The eleven declarations submitted by Plaintiffs are sufficient to make "a preliminary determination . . . [that] the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536 n.4); *see Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014) (granting the plaintiff's motion for conditional certification where "the ten affidavits submitted in support of conditional certification each uniformly allege that the workload imposed on underwriters, as well as the policies concerning their work, required them to work in excess of forty hours per week, and that supervisors instructed these underwriters not to record any hours in excess of that time").

Additionally, P.F. Chang's defense that Plaintiffs' claims are too individualized is unavailing at this stage. "Defendant's claim or defense that Plaintiffs' claims are too individualized to be litigated collectively are 'relevant to determination of a stage two decertification issue after discovery has closed.'" *Pereira*, 261 F.R.D. at 66 (citation omitted); *see also Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. CV 15-482, 2016 WL 3077936, at *9 (E.D. Pa. June 1, 2016) ("Gateway's argument that individualized determinations will make this case unsuitable for a collective proceeding is "best left for the second stage of FLSA collective action certification." (citation omitted)); *Barrios v. Suburban Disposal, Inc.*, No. 2:12-CV-03663, 2013 WL 6498086, at *3 (D.N.J. Dec. 11, 2013) ("This 'individualized inquiry' argument is properly addressed on a motion for final certification, not a motion for conditional certification."); *Burkhart-Deal*, 2010 WL 457127, at *3 ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process.").

I will grant Plaintiffs' motion for conditional certification because they have made a modest factual showing that all servers in the putative class are similarly situated.

**B. Personal Jurisdiction**

P.F. Chang's argues that the collective action should be limited to named Plaintiffs and only those opt-in plaintiffs who worked in restaurants in Pennsylvania because the Court lacks personal jurisdiction over P.F. Chang's as to any opt-in servers who did not work in Pennsylvania.[17] Specifically, P.F. Chang's argues that the holding in *Bristol-Myers Squibb Company v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*BMS*"), extends to opt-ins in an FLSA collective action brought in federal court.

In *BMS*, a group of plaintiffs brought a mass action in California state court, alleging that the defendant's drug had damaged their health. 137 S. Ct. at 1777. The California state court lacked general jurisdiction over the defendant. The Supreme Court held that in order for California to exercise jurisdiction over the claims of each individual plaintiff, it must possess specific jurisdiction over each of those claims—"[i]n other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In *BMS*, there was no adequate connection between the State and the nonresidents' claims. *Id.* at 1781. Thus, the Court held that the California state court could not exercise jurisdiction over the

---

[17] "P.F. Chang's does not dispute that this Court has jurisdiction over the named Plaintiffs. This includes two Plaintiffs, Steven Belt and Grace Castro, who have not worked within the state of Pennsylvania because P.F. Chang's transferred the case to this jurisdiction while Plaintiff Belt was a named Plaintiff, and because P.F. Chang's did not dispute Plaintiffs' request to amend the complaint to include Plaintiff Castro." Def.'s Sur-reply 1 n.*.

nonresidents' claims because to do so would violate the Due Process Clause of the Fourteenth

Amendment—a limit on the personal jurisdiction of state courts.  *Id.* at 1779-81.

In holding that a state court must possess specific jurisdiction over the claims of each

individual in a mass action, the Supreme Court acknowledged: "since our decision concerns the

due process limits on the exercise of specific jurisdiction by a State, we leave open the question

whether the Fifth Amendment imposes the same restrictions on the exercise of personal

jurisdiction by a federal court."  *Id.* at 1783-84.  Additionally, the Court "d[id] not confront the

question whether its opinion . . . would also apply to a class action in which a plaintiff injured in

the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured

there."  *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

"No circuit court of appeals has addressed the question of whether *BMS* applies to FLSA

collective actions, and the district courts nationwide are split."  *Hammond v. Floor & Decor*

*Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 2473717, at \*13 (M.D. Tenn. May 13, 2020)

(citing *Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-1646, 2019 WL 5587335, at \*6–8

(S.D.N.Y. Oct. 25, 2019) (collecting cases)).  P.F. Chang's argues that *BMS* applies to FLSA

collective actions and a court must determine whether it has specific jurisdiction over the claims

of each individual opt-in plaintiff.  In contrast, Plaintiffs argue that in the context of an FLSA

collective action in federal court, rather than a mass action in state court, the only requirement is

that a court possesses personal jurisdiction over the claims of each named plaintiff.

Plaintiffs also contend that the Court need not reach the difficult question of whether

*BMS* applies to FLSA collective actions because P.F. Chang's has waived its personal

jurisdiction defense by failing to raise the issue of personal jurisdiction over opt-in plaintiffs'

claims when it moved for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(g)(2), (h)(1).  P.F.

Chang's counters that it has not waived its personal jurisdiction defense with respect to opt-in

plaintiffs because opt-in plaintiffs "are not currently full parties to the litigation."  Def.'s Sur-

reply 1.  P.F. Chang's asserts that "individuals do not become party to an FLSA collective action

until both filing a consent to join with the Court and the Court certifies the collective action."[18]

*Id.* at 2.  Despite admitting that an individual does not become a party to an FLSA collective

action until after certification, P.F. Chang's contends that it "appropriately raised the personal

jurisdiction defense in opposition to Plaintiffs' conditional certification motion."  *Id.*  Thus, even

though P.F. Chang's acknowledges that none of the opt-in plaintiffs are "full parties to the

litigation," *id.* at 1, and no facts are known about any of the individuals who might consent to

join this action after conditional certification, P.F. Chang's still urges the Court to deny

conditional certification to any current or future opt-in plaintiffs who did not work for P.F.

Chang's in Pennsylvania.

Despite P.F. Chang's desire to eliminate most of the collective action class prior to

conditional certification, it is inappropriate to reach the question of personal jurisdiction before

individuals have even been given notice of the collective action and the opportunity to opt-in.

The FLSA provides: "No employee shall be a party plaintiff to any such action unless he gives

his consent in writing to become such a party and such consent is filed in the court in which such

action is brought."  29 U.S.C. § 216(b).  "Notably, § 216(b) is written in the negative . . . .  Thus,

the statute establishes that it is, at a minimum, necessary to file a written consent in order to

become a party-plaintiff, but it is silent as to whether filing such a consent, without more, is

sufficient to confer that status."  *Halle*, 842 F.3d at 225n.10.

---

[18] At the time P.F. Chang's filed this Sur-Reply, thirteen individuals had already consented to opt-in to the collective action even though the case had not yet been conditionally certified.

The FLSA clearly indicates that the Court cannot decide whether it has jurisdiction over

individuals who have not yet opted-in because they are not parties to the collective action.  For

the limited number of individuals who have already consented to join the action, P.F. Chang's

concedes that opt-in plaintiffs "do not become party to an FLSA collective action until both

filing a consent to join with the Court and the Court certifies the collective action."[19]  Def.'s Sur-

reply 2.  P.F. Chang's concession, in conjunction with the Third Circuit's statement in *Halle* that

written consent to join a collective action may not be sufficient to confer party status, leads to the

conclusion that it would be premature to reach any decision on the personal jurisdiction of opt-in

plaintiffs at this stage of the litigation.  *Cf. Molock v. Whole Foods Market Group, Inc.*, 952 F.3d

293, 295 (D.C. Cir. 2020) (holding in a Rule 23 class action that "[a]bsent class certification,

putative class members are not parties before a court, rendering the defendant's motion [to

dismiss all nonresident putative class members for lack of jurisdiction] premature").  It also leads

to the conclusion that P.F. Chang's has not waived its personal jurisdiction defense with respect

to opt-in plaintiffs.  *Cf. Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (holding in a

Rule 23 class action that the defendant did not waive its personal jurisdiction defense by failing

to raise it in a Rule 12 motion because "[p]rior to class certification . . . a personal jurisdiction

defense as to putative non-resident class members was not 'available' under Rule 12").  It would

be odd indeed for the Court to have to determine personal jurisdiction for the limited number of

---

[19] P.F. Chang's does not argue that an individual becomes a party after conditional certification.  This makes sense:

> The "sole consequence" of conditional certification is the dissemination of court-approved notice to potential collective action members.  Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process.

*Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp.*, 569 U.S. at 74).

individuals who have consented to join the action at this point and then again as each additional

individual joined the suit.  Such piecemeal jurisdictional analysis would quickly impair one of

the benefits of the FLSA—to "yield[] efficiencies for the judicial system."  *Halle*, 842 F.3d at

223.  Because it is premature to conduct any personal jurisdiction analysis, the Court declines to

issue an advisory opinion as to whether *BMS* applies to FLSA collective actions.

### C. Proposed Manner of Notice

In order to facilitate notice, Plaintiffs request that the Court order P.F. Chang's to

produce, within seven days of the Court's order granting conditional certification, a list of all

servers who worked at P.F. Chang's in the last three years and 288 days (9.5 months) in any of

the states included in the collective action.  The list must include each server's full name, last

known address, last known personal email address,[20] last known mobile number, and dates of

employment.[21]  Plaintiffs propose to send notice to members of the putative collective action as

follows:

- Sending notice by first-class U.S. Mail to the last known address of each eligible class

  member;

- Sending an electronic copy of the notice to each eligible class member's email address;

- Sending an electronic copy of the notice to each eligible class member's cellular

  telephone as a text message;

---

[20] Plaintiffs request the last known personal email address for former employees and the work email address for current employees.  Because "P.F. Chang's does not maintain company email addresses," Def.'s Resp. 14, P.F. Chang's is only able to provide personal email addresses for former and current servers.

[21] Plaintiffs' also request that if any notices are returned as undeliverable and Plaintiffs' counsel cannot locate an alternate address for certain putative class members, then Defendant must provide Plaintiffs' counsel with the date of birth of that putative class member within three days of the request.

- Mailing a reminder letter thirty days before the close of the opt-in period to all eligible class members who have not yet joined the action; and

- Emailing an electronic copy of the reminder letter to all eligible class members who have not yet joined the action.

Plaintiffs request a sixty-day opt-in period from the date of mailing of the notice for the collective members to join the action.

P.F. Chang's seeks to limit Plaintiffs method of distributing notice to first-class U.S. Mail, arguing that sending email and text message notice would be redundant.[22]  Accordingly, P.F. Chang's objects to providing Plaintiffs with the email addresses and phone numbers of eligible class members.[23]  In addition, P.F. Chang's objects to Plaintiffs sending any form of a reminder letter, arguing that a reminder would be redundant and could be viewed as a judicial endorsement of the lawsuit.

A court has the authority to monitor the preparation and distribution of the notice to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  After reviewing Plaintiffs' proposed notice, the Court finds that it is timely, accurate, and informative, and the sixty-day opt-in period is reasonable.

---

[22] P.F. Chang's contends that giving Plaintiffs the phone numbers of servers might raise privacy concerns. P.F. Chang's provides no legal authority that delineates why providing the phone numbers of eligible class members would raise privacy concerns.  Instead it relies on a single district court's statement that "courts generally do not order the disclosure of personal information beyond mailing addresses, absent a showing that notice via first class mail would be insufficient." *Atis v. Freedom Mortg. Corp.*, No. CV 15-3424, 2016 WL 7440465, at *5 (D.N.J. Dec. 27, 2016).  In the modern digital age, however, there are numerous courts that have ordered the disclosure of email addresses and phone numbers. *See, e.g., Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516 (W.D. Tex. 2015) (noting "a plethora of [FLSA] cases in which courts have allowed discovery of phone numbers of putative class members," and ordering the defendants to produce the names, addresses, email addresses, and phone numbers of putative class members).

[23] P.F. Chang's is willing to provide phones numbers of eligible class members to Plaintiffs if notice is not deliverable via regular mail and a secondary means of providing notice via text message becomes necessary.

Despite P.F. Chang's concerns about redundancy, it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers. *See, e.g., Regan v. City of Hanahan*, No. 2:16-CV-1077-RMG, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("Plaintiffs' request that notice be distributed via direct mail, email and text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move."); *Irvine v. Destination Wild Dunes Mgmt.*, Inc., 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."). Providing servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry. *See, e.g., Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (noting that distributing notice via mail, email, and text message is "ordinarily approved," especially in high turnover types of employment); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.").

Additionally, sending a reminder letter thirty days before the close of the opt-in period via mail and email is reasonable. Courts in the Third Circuit regularly permit reminder letters. *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019); *Archer v. Defs., Inc.*, No. 18-CV-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018). Rather than being redundant,

"a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2015 WL 6150862, at \*23 (D. Minn. Oct. 19, 2015). Lastly, the content of the reminder letter is devoid of any indication of judicial endorsement of the lawsuit, and P.F. Chang's has not explained why the act of sending a reminder letter itself would put a judicial imprimatur on the lawsuit. The reminder letter is a neutral communication that does not recommend class participation and is reasonable to distribute.

Because the proposed notice is timely, accurate, and informative, and the method of distribution is reasonable, I approve Plaintiffs' proposed notice plan. While the method and manner of notice are approved, the Court recognizes that some minor edits to the language of the notice are necessary before distribution to eligible putative class members.[24] Therefore, the Court will confer with the parties and authorize these changes prior to distribution of the notice.

## III. CONCLUSION

For the above reasons, I will conditionally certify the proposed collective action and approve Plaintiffs' proposed notice plan. However, Plaintiffs' counsel cannot distribute the notice until after the Court authorizes minor edits to the language of the notice that are necessary prior to distribution.

          _s/ANITA B. BRODY, J._____
          ANITA B. BRODY, J.

Copies **VIA ECF**       07/08/2020

---

[24] For instance, Plaintiffs' proposed notice includes references to servers in New York. However, New York servers are no longer included in the proposed class. *See* Pls.' Reply 2 n.1.