**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN BELT and GRACE CASTRO,** **individually and on behalf of all others** **similarly situated and the Putative Classes** | |
| Plaintiffs, | Civil Action No.: 18-3831-AB |
| v. | |
| **P.F. CHANG'S CHINA BISTRO, INC.** | |
| Defendant. | |

<u>**MEMORANDUM IN SUPPORT OF JOINT MOTION TO PRELIMINARILY APPROVE**</u>
<u>**FAIR LABOR STANDARDS ACT SETTLEMENT AND TO VOLUNTARILY DISMISS**</u>
<u>**STATE LAW CLAIMS**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION.............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

I.       THE PARTIES VIGOROUSLY LITIGATED THIS CASE ..................................... 1

II.      THE PARTIES CONDUCTED EXTENSIVE DISCOVERY ................................... 3

III.     SETTLEMENT TERMS ............................................................................................. 5

LEGAL ARGUMENT ...................................................................................................... 8

I.       THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA
         COLLECTIVE FOR SETTLEMENT PURPOSES ................................................... 8

II.      DISMISSAL OF THE STATE LAW CLAIMS IS APPROPRIATE ........................ 9

III.     THE FLSA SETTLEMENT WARRANTS APPROVAL ........................................ 11

    A. The Settlement Resolves a Bona Fide Dispute ................................................ 13

    B. The Settlement Is Fair and Reasonable .......................................................... 14

        1.    The Settlement Accounts for the Costs, Risks, and Delays of Litigation (Factors
              1 and 6).................................................................................................... 16

        2.    The Parties Conducted Ample Discovery (Factor 3) ............................. 17

        3.    The Settlement is Within the Range of Reasonableness, in Light of the Risks
              and Possible Recovery (Factors 8 and 9) .............................................. 17

        4.    The Remaining *Girsh* Factors Support Preliminary Approval (Factors 2 and 7)
              20

        5.    The Remaining Rule 23 Factors Support Preliminary Approval ..................... 20

    C. The Proposed Attorneys' Fees Award are Reasonable and Should be Preliminarily
       Approved .......................................................................................................... 23

    D. The Settlement Does Not Frustrate FLSA Implementation ......................... 25

CONCLUSION ................................................................................................................ 26

FIRM:64492952v3

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474 (E.D. Pa. 2014) ................................. 12

*Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. 2016) ............................ 9

*Arrington v. Optimum Healthcare IT, LLC*, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) .......... 24

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079

    (E.D. Pa. Sept. 13, 2016) .......................................................................................... 22

*Blofstein v. Michael's Family Rest.*, 2019 WL 3288048 (E.D. Pa. July 19, 2019) ..................... 24

*Brown v. TrueBlue, Inc.*, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ..................................... 15

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013) ......................................... 8

*Carney v. Travelers Aid Soc'y of Philadelphia*, No. CV 19-3599, 2020 WL 703684

    (E.D. Pa. Feb. 11, 2020) ...................................................................................... 12, 24

*City of Detroit v. Grinnel Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................... 15

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 24

*Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715

    (D. Kan. Oct. 29, 2021) ........................................................................................... 19

*Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 WL 3943355

    (E.D. Pa. Aug. 21, 2019) ......................................................................................... 16

*Fried v. Ideal Concepts Inc.*, 2018 WL 6587919 (E.D. Pa. July 17, 2018) ........................... 11, 12

*Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483 (E.D. Pa. 2018) .......................................... 8, 9, 16

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975.) ........................................................................... 15

*Gonzalez v. Fallanghina, LLC*, No. 16-CV-01832-MEJ, 2017 WL 1374582

    (N.D. Cal. Apr. 17, 2017) ........................................................................................ 11

*Goplin v. WeConnect, Inc.*, No. 17-CV-773-JDP, 2019 WL 13322261

   (W.D. Wis. Nov. 25, 2019) ................................................................................. 9

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ................................ 23

*Hall v. Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ............. 15

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ................................ 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768

   (3d Cir. 1995) ................................................................................... 8, 23

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ................................ 21

*Jennings v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2018 WL 4773057 (N.D. Cal.

   Oct. 3, 2018) ................................................................................... 9, 11

*Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 6877577

   (W.D. Ky. Nov. 23, 2020) ........................................................................... 10

*Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016) .................................... 13

*Logue v. Nissan N. Am., Inc.*, No. 08-2023-STA/DKV, 2008 WL 2987184

   (W.D. Tenn. July 30, 2008) ......................................................................... 10

*Lynn's Food Stores Inc. v. United States,* 679 F.2d 1350 (11th Cir.1982) ............................ 12, 13

*Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812

   (N.D. Cal. July 23, 2019) ......................................................................... 9, 11

*McGee v. Ann's Choice, Inc.*, 2014 WL 2514582 (E.D. Pa. June 4, 2014) ................................ 25

*Miller v. Hygrade Food Prod. Corp.*, No. 01-3953, 2002 WL 1060698

   (E.D. Pa. May 23, 2002) ......................................................................... 10, 11

*Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736 (E.D. Pa. Aug. 26, 2019) ............. 24

iv

*Mygrant v. Gulf Coast Rest. Grp., Inc.*, No. CV 18-0264-WS-M, 2019 WL 4620367 (S.D. Ala.

　　Sept. 23, 2019) ......................................................................................................... 19

*Potoski v. Wyo. Valley Health Care Sys.*, 2020 WL 207061 (M.D. PA. Jan. 14, 2020) ....... passim

*Restaurant Law Center v. U.S. Dep't of Labor,* No. 21-1106 (W.D. Tex.);

　　No. 23-50562 (5th Cir.) ............................................................................................ 14

*Reynolds v. Turning Point Holding Co., LLC*, No. 2:19-CV-01935-JDW, 2022 WL 2541352

　　(E.D. Pa. July 7, 2022) ............................................................................................. 15

*Shappell v. PPL Corp.*, No. 06-2078 (AET), 2007 WL 893910 (D.N.J. Mar. 21, 2007) ............ 10

*Smith v. Merck & Co., Inc.*, 2019 WL 3281609 (D. N.J. July 19, 2019) ...................................... 17

*Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646 (E.D. Pa. 2020) ........................... 24, 25

*Stokes v. Consolidated Wings Investment, LLC*, S.D. In. Case No. 1:15-cv-01932-RLY-TAB .. 19

*Williams v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL 4018205

　　(E.D. Pa. Sept. 9, 2011) ............................................................................................ 24

*Willix v. Health First, Inc.*, 2011 WL 754862 (E.D.N.Y. Feb. 11, 2011) ................................... 12

*Zorrilla v. Carlson Restaurants Inc.*, No. 14 CIV. 2740 (AT), 2017 WL 5004848

　　(S.D.N.Y. Oct. 26, 2017) ...................................................................................... 19, 24

**Statutes**

29 C.F.R. § 531.56(e) ...................................................................................................... 2, 14, 18

29 U.S.C. § 201 *et seq.* ............................................................................................................. 1

29 U.S.C. § 216(c) ................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments) ...................... 17, 18, 21, 22

Federal Rule of Civil Procedure 23 ......................................................................................... 15

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ....................................................................... 2

v

## INTRODUCTION

After years of hard-fought litigation, including multiple contested motions, a mandamus petition to the Third Circuit, and extensive discovery (including Defendant producing voluminous data reflecting detailed work history for the Plaintiffs, and written discovery responses from more than 750 Opt-in Plaintiffs), Plaintiffs and Defendant P.F. Chang's China Bistro, Inc. ("Defendant" or "P.F. Chang's") (Plaintiffs and Defendant collectively, the "Parties") participated in a full-day mediation with Hon. Diane Welsh (Ret.) that resulted in an agreement in principle to resolve this matter. Even then, further negotiations, and further assistance from Judge Welsh, were necessary to reach the ultimate agreement. This is a substantial settlement, which will provide relief to thousands of workers and avoid the risk and expense of further litigation. The Court should approve the settlement so the workers can receive payment and this matter can be closed.

As detailed below, the settlement is the product of arm's-length negotiations by informed counsel, assisted by a well-respected mediator. The settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability, damages, and continued collective certification under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Accordingly, Plaintiffs respectfully request that the Court grant preliminary settlement approval. Additionally, because the Parties reached this settlement before a class was certified and the settlement only covers the Opt-in Plaintiffs, the Court should dismiss the putative class claims without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE PARTIES VIGOROUSLY LITIGATED THIS CASE

Three Named Plaintiffs filed this hybrid collective and class action on July 11, 2018, alleging class minimum wage and overtime claims under Pennsylvania and Virginia law, and

collective action claims under the FLSA.[1] (Compl., ECF No. 1.) Plaintiffs worked as servers for P.F. Chang's. As permitted under the applicable regulations and statutes, P.F. Chang's applied a tip credit to their wages (which permits an employer to apply tips servers earn toward its minimum wage obligations). Plaintiffs alleged that servers spent more than 20% of their time performing non-tipped work, and were therefore entitled to be paid the full federal minimum wage rather than the tip credit rate. Plaintiffs alleged that servers performed some work that was not directly related to their tip-producing work (such as cleaning bathrooms), as well as some side work that was directly-related to their tip producing work (such as sweeping dining areas). P.F. Chang's denied all of those allegations.

On January 15, 2019, Defendant moved for judgment on the pleadings, arguing that a November 8, 2018 Department of Labor ("DOL") opinion letter that reverses the DOL's long-standing limitations on tipped employees performing non-tipped work eliminated Plaintiffs' claims. (*See* ECF No. 37-1.) Plaintiffs argued that the FLSA recognizes situations where an employee is clearly working in a dual job capacity, such as when "a maintenance man in a hotel also serves as a waiter," and also recognizes that someone is also working in a dual job capacity in less clear situations, such as when a waitress spends more than "part of her time cleaning and setting tables, toasting bread, making coffee and [more than] occasionally washing dishes or glasses." 29 C.F.R. § 531.56(e). Plaintiffs asserted that the Court should not give any deference to the November 8, 2018 opinion letter because the DOL's new interpretation of the dual jobs

---

[1] The original Named Plaintiffs included Steven Belt, Laura Council, and James Harris. The parties later stipulated to the dismissal of Plaintiffs' Virginia claims. (ECF No. 43.) On November 4, 2019, Plaintiffs filed an Amended Complaint (ECF No. 69), adding named Plaintiff Grace Castro and asserting a class minimum wage and overtime claims under Maryland law. Ms. Council and Mr. Harris were voluntarily dismissed from the case with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), by stipulation of the parties. (ECF Nos. 143, 199.)

regulation was unreasonable and did not reflect fair and considered judgment. Thus, the Court was free to interpret the dual jobs regulation on its own. (ECF No. 39.) The Court agreed with Plaintiffs and concluded that when a server spends more than 20% of their time performing untipped tasks related to their tipped occupation, they are working in a dual job capacity and must be paid the full minimum wage for that time. (*See* ECF No. 56.)

On November 21, 2019, Plaintiffs moved for conditional certification of servers in all states where state law permits the tip credit.[2] (ECF No. 73.) Plaintiffs presented evidence of Defendant's practice of paying its servers the tip-credit rate extends nationwide in tip credit states. Plaintiffs presented evidence of the types of side work that servers perform before the restaurant opens to customers, during their shifts, and before they conclude their shifts.

The Court granted that motion, and approved notice. (ECF Nos. 86 and 87.) Defendant challenged that ruling through a petition for writ of mandamus, which was denied by the Third Circuit. (ECF No. 98.) Pursuant to this Court's Order regarding the content and manner of distribution of notice, the notice was modified and distributed accordingly. (ECF Nos. 86 at 17–20; 97.) Following the notice period, Plaintiffs filed consent forms for all the individuals who joined through the notice process. (ECF Nos. 105–114.) Approximately 6,211 individuals opted-into the case, although some have since withdrawn.

## II.     THE PARTIES CONDUCTED EXTENSIVE DISCOVERY

Following the notice period, the Parties engaged in considerable written discovery. The Parties disputed many aspects of discovery, including: a) how many of the approximately 6,200

---

[2] These states are Alabama, Arkansas, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin.

Plaintiffs should be required to participate in written discovery, b) how many Plaintiffs should be required to sit for depositions, c) the substance of Defendant's discovery requests, d) how to handle Plaintiffs who were selected for discovery but did not respond, and e) whether Plaintiffs' discovery responses should precede any of Defendant's further discovery responses. (Declaration of Daniel Brome ("Brome Decl.") ¶ 3.) The Parties engaged in extensive meet and confer efforts and motion practice over these disputes. (*Id.*; ECF Nos. 117, 118, 119, 120, 128, 138, 139, 146, 149, 152, 153, 166, 178, and 185.)

The outcome of this process was that the Parties agreed that 12% of the Opt-in Plaintiffs—approximately 745 individuals—would respond to written discovery, consisting of up to 10 interrogatories, 10 requests for production of documents, and 10 requests for admission. (Brome Decl. ¶ 3.) Because some Plaintiffs did not respond, written discovery requests were ultimately issued to 1,228 Opt-in Plaintiffs, and a total of 778 individuals responded to one or more set of written requests, and 451 Opt-ins responded to all three sets. (*Id.*) The Court authorized Defendant to depose a minimum of 62 Opt-in Plaintiffs, and Plaintiffs to depose 62 supervisors. The Parties were in the process of scheduling these depositions when they agreed to attend mediation. (*Id.*)

In addition to the considerable evidence provided by Plaintiffs, Defendant produced detailed records of servers' work histories and compensation. (*Id.*) Specifically, Defendant produced data pulled from its point of sale systems for 5,700 Opt-in Plaintiffs, which showed the times servers were assigned to a table and closed out a table. (*Id.*) Plaintiffs' Counsel analyzed the point of sale data, which included 20 million time punches (such as clocking in or clocking out, or punching a table), in great detail. (*Id.*)

In sum, at the time the Parties mediated this case, they had an enormous amount of evidence that allowed them to thoroughly analyze the claims at issue.

### III.   SETTLEMENT TERMS

The Parties attended mediation with Hon. Diane Welsh (ret.) on December 13, 2023. (Brome Decl. ¶ 4.) Following the mediation, the Parties continued to negotiate the terms of the proposed settlement with the continued help of Judge Welsh and executed a terms sheet on March 6, 2014. (*Id.*) The long form settlement agreement, which is the subject of this motion, was executed on May 6, 2024. (Brome Decl. Ex. 1 (hereinafter, "Settlement" or "Agreement").)

The Settlement covers all of the Named and Opt-in Plaintiffs who have filed consents and not withdrawn from this action ("FLSA Opt-in Plaintiffs"); the FLSA Opt-in Plaintiffs who accept their settlement shares are the "Settling Plaintiffs." (Agreement ¶ I.E.1.) The Settlement resolves their claims for a Total Settlement Amount of ███████, which includes all Plaintiff payments, enhancements, attorneys' fees and costs, and settlement administration costs, but does not include employer-side taxes. (*Id.* ¶ I.D.)

The Agreement provides that Plaintiffs' Counsel may seek attorneys' fees of up to ███████ (33% of the Total Settlement Amount), costs (including for settlement administration) of up to ████ (Agreement ¶ II.D.2.), and enhancements of ████ to the two Named Plaintiffs (¶ II.D.1.) To the extent the Court reduces any of those amounts, the remainder will be reallocated to the Settling Plaintiffs. (*Id.*)

The allocation of Settlement Shares will be determined after deducting those amounts from the Total Settlement Amount and reserving a contingency fund. (*Id.* ¶ II.C.) After applying those deductions, individual Settlement Shares will be determined based on Plaintiffs' Counsel's damages analysis. (*Id.*) To calculate each FLSA Opt-in Plaintiff's *pro-rata* settlement allocation, Plaintiffs' Counsel performed a detailed and comprehensive damages analysis. (Brome Decl. ¶ 6.) For each FLSA Opt-in Plaintiff, the analysis considered the hours worked for Defendant during

the applicable statutory period and wages paid. (*Id.*) The analysis then calculated the difference between the wage rate actually paid and the federal minimum wage. (*Id.*) Finally, the analysis assumed that each FLSA Opt-in Plaintiff was able to recover that minimum wage differential for 30% of the time worked at sub-minimum wage rates. (*Id.*) Based on this analysis, Plaintiffs' Counsel allocated individual *pro rata* Settlement Shares for each FLSA Opt-in Plaintiff. (*Id.*) The amounts are expected to range from ██████████████████████████ (*Id.*) In conjunction with the settlement, Defendant has begun to supplement its data production, and is continuing to provide additional data; Plaintiffs' Counsel will incorporate the supplemental data productions into the allocation prior to notice. (*Id.*)

Settlement Shares will be allocated as half wages (reported on an IRS form W-2) and half non-wages (reported on an IRS form 1099). (Agreement ¶¶ II.E.1., II.E.2.) Named Plaintiff enhancements will be reported on an IRS form 1099. (*Id.* ¶ II.E.3.) The Settlement Notice will inform FLSA Opt-in Plaintiffs of their expected Settlement Shares. (*Id.* ¶ II.C.)

Within 14 days of the Court granting Preliminary Approval, the Settlement Administrator will distribute the Settlement Notice. FLSA Opt-in Plaintiffs will have 60 days from the date Settlement Notice is mailed to accept or reject the settlement, as set forth below. For any FLSA Opt-in Plaintiffs who do not respond within the Initial Notice Period, the Parties will work together to conduct additional outreach efforts over the next thirty (30) days to attempt to obtain a response (the "Extended Notice Period"). (Agreement ¶ II.A.2.) The Administrator will distribute notice by mail, email, and text message (*Id.* ¶¶ II.F.1., II.G.2.b), and use any means practicable to find new contact information for returned mail. (*Id.* ¶ II.G.2.c.) The Administrator will set up a website (*id.* ¶ II.G.2.d), will provide regular reports (*id.* ¶ II.G.2.e), and will work with the Parties for additional outreach after initial notice period (*Id.* ¶¶ II.G.2.f).

The parties will file a motion for final approval within seven days of the Extended Notice Deadline. (*Id.* ¶ II.A.3.) Defendant will fund the Qualified Settlement Fund by wiring the Total Settlement Amount within 31 days after final approval, assuming no appeals have been filed. (*Id.* ¶¶ I.L., II.A.4.) The administrator will promptly distribute payments, and Settling Plaintiffs will have 120 days to negotiate their payments. (*Id.* ¶ II.A.5.) Any uncashed checks will be donated to charity. (*Id.* ¶ II.G.7.)

FLSA Opt-in Plaintiffs may opt-out of the Settlement by returning an exclusion letter to the administrator ("Rejecters"). (*Id.* ¶ II.G.3.) Defendant will not pay any amounts that were initially allocated to Rejecters, and Defendant has the option to void the settlement if more than five percent of the FLSA Opt-in Plaintiffs reject the settlement. (*Id.* ¶¶ II.G.3.c., II.G.3.d.) Any Rejecter will receive no payment under the Agreement, will have their claims dismissed without prejudice, and will have 30 days of tolling after the Approval Date to file a new case (in addition to their consent-based tolling while this case was pending). (*Id.* ¶ II.G.3.b.)

Any FLSA Opt-in Plaintiffs who do not respond during the Initial and Extended Notice Period ("Non-Responders") will have their claims dismissed with prejudice (although already-filed proceedings would not be impacted) (*Id.* ¶ II.G.4.a.). Any amounts allocated to Non-Responders will be reallocated pro rata to the Settling Plaintiffs. (*Id.* ¶ II.G.4.b.)

Settling Plaintiffs will release their wage and hour claims under the FLSA and related state law while the Settling Plaintiff was employed by Defendant until March 6, 2024. (*Id.* ¶ II.H.1.)

The Settlement Agreement is not confidential, and Settling Plaintiffs are free to discuss it. However, Counsel for the Parties agree not to publicize the settlement, and the Parties agreed, and the Court approved, that the monetary amounts of the Settlement may be redacted from public filings. (*Id.* ¶ II.I.2; ECF No. 202.)

## LEGAL ARGUMENT

Federal Courts favor the voluntary resolution of litigation through settlement, particularly in the class action context. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 n.8 (3d Cir. 2013). The Third Circuit has held that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding formal litigation." *In re Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Here, the Parties reached a favorable settlement after years of hard-fought litigation, which will avoid the need for further proceedings that would have been both costly and risky. For the reasons set forth below, the Court should allow voluntary dismissal of the putative Rule 23 State Law claims, and grant preliminary approval of the Parties' FLSA settlement.

## I.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA COLLECTIVE FOR SETTLEMENT PURPOSES

The Court granted conditional certification, but at the time of Settlement the Parties had not moved for final certification or decertification of the collective. It is therefore appropriate for the Court to address final certification in the context of settlement approval. (*See* Agreement II.A.1.) Final certification considers whether "each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citation and internal quotation marks omitted). In the settlement context, final certification need not address whether differences among plaintiffs will lead to manageability concerns, since the settlement avoids a collective trial, and can instead focus on whether the opt-ins share relevant similarities. *See Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 492 (E.D. Pa. 2018) (granting final certification in settlement context).

Here, the Opt-in Plaintiffs share crucial similarities with respect to the claims at issue. They worked for Defendant in tipped roles and were paid on the reduced tip credit rates, but allege they

performed similar and excessive side work such that they were entitled to receive the full minimum wage. (Brome Decl. ¶ 2.) These similarities are sufficient for final certification of this settlement collective. *See Galt*, 310 F. Supp. 3d at 492–93 (granting final certification despite "different salaries, titles, and work schedules," because the opt-ins' "pay and conditions of employment are sufficiently comparable for their interests to be aligned."); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 759–60 (E.D. Pa. 2016) (granting final certification for settlement where opt-ins worked under similar conditions and seek to advance the same claims and obtain the same relief.).

The Court should grant final certification for settlement purposes.

## II.     DISMISSAL OF THE STATE LAW CLAIMS IS APPROPRIATE

Because an FLSA collective and a Rule 23 class have distinct procedures, wage cases such as this, asserting claims under federal and state law, can settle after conditional certification of FLSA claims but before class certification of state claims. *See, e.g.*, *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812, at *1 (N.D. Cal. July 23, 2019) (explaining that the settlement covered those individuals who had opted into the FLSA collective, but not the putative class members); *Jennings v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2018 WL 4773057, at *1 (N.D. Cal. Oct. 3, 2018) (same). In this posture, the parties can resolve the FLSA claims for the opt-ins, and dismiss the uncertified class claims without prejudice, so putative class members retain their rights. *See, e.g.*, *Goplin v. WeConnect, Inc.*, No. 17-CV-773-JDP, 2019 WL 13322261, at *1 (W.D. Wis. Nov. 25, 2019) (in situation where "the parties' settlement affects only those who opted into the FLSA collective" the court explained that since "the court never certified plaintiffs' proposed Rule 23 class, they are free to voluntarily dismiss their class claims.").

Here, Plaintiffs had not yet moved for class certification, and the Parties reached a settlement that covers the FLSA Opt-ins, but not any the putative classes. Therefore, voluntary dismissal under FRCP 41(a)(2) is appropriate.[3] Even in class actions, "courts generally agree that Rule 41(a)(2) motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit. *Shappell v. PPL Corp.*, No. 06-2078 (AET), 2007 WL 893910, at *1 (D.N.J. Mar. 21, 2007) (citations and quotations omitted) (granting plaintiff's opposed motion to dismiss class action claims). In determining whether to grant dismissal of a pre-certification class action, courts generally consider: "(1) whether the dismissal is the result of collusion between plaintiffs and defendants or their counsel; and (2) whether the dismissal would prejudice absent class members." *Miller v. Hygrade Food Prod. Corp.*, No. 01-3953, 2002 WL 1060698, at *2 (E.D. Pa. May 23, 2002) (granting voluntary dismissal of class claims in conjunction with approving settlement covering defined group of individuals). Here, both considerations support granting dismissal.

First, this settlement was reached as a result of a full day of mediation with a skilled and experienced mediator. (Brome Decl. ¶ 4.) Even after the mediation, the Parties continued to negotiate for weeks—with the assistance of the mediator—before agreeing to a terms sheet, and then for additional weeks before executing the long form agreement that is the subject of this motion. (*Id.*) These facts are sufficient to show the requested dismissal is not the result of improper

---

[3] Arguably, the class claims could be dismissed by stipulation, <u>without</u> Court approval, under FRCP 41(a)(1). *See Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 6877577, at *6 (W.D. Ky. Nov. 23, 2020) ("Because the Rule 23 class at issue here has neither been certified nor proposed for certification for the purposes of settlement, the text of Rule 23(e) does not indicate that the voluntary dismissal sought in this case requires court approval."); *Logue v. Nissan N. Am., Inc.*, No. 08-2023-STA/DKV, 2008 WL 2987184, at *3 (W.D. Tenn. July 30, 2008) (discussing interplay between Rules 23 and 41, emphasizing that the language of Rule 23(e) requires court approval for a certified class). Nevertheless, to ensure transparency, the Parties seek Court approval here.

collusion. *See Miller*, 2002 WL 1060698, at *2 (where individual settlements "were negotiated vigorously by both sides under the close and careful supervision" of a Magistrate Judge over extended period, that process ensured "the final resolution . . . was the product of fair compromise by all of the parties.").

Second, dismissal would not prejudice absent class members, because the dismissal is without prejudice. *See Gonzalez v. Fallanghina, LLC*, No. 16-CV-01832-MEJ, 2017 WL 1374582, at *6 (N.D. Cal. Apr. 17, 2017) (approving individual FLSA settlement and dismissing putative collective claims following Rule 23 analysis explaining that since the proposed dismissal was without prejudice, the rights of the putative collective members are not compromised.); *Miller*, 2002 WL 1060698, at *2 (in a dismissal pre-certification, the absent class members "have at best a speculative reliance interest" and the dismissal "is not legally binding on absent class members"). Here, the dismissal is without prejudice, so the claims of absent putative class members are not being compromised. And there is no reason to think that class members have relied on Plaintiffs pursuing this case, since there has been little media coverage (Brome Decl. ¶ 7) and the FLSA collective notice did not refer to the putative class claims. (ECF No. 97-1). *See Madrid*, 2019 WL 3302812, at *7 (putative class members received notice of FLSA case, but that did not mention the class action); *Jennings*, 2018 WL 4773057, at *10 (FLSA notice did not mention class action, and the case did not receive publicity or media coverage).

## III.   THE FLSA SETTLEMENT WARRANTS APPROVAL

FLSA settlements must be approved for fairness. *See, e.g.*, *Fried v. Ideal Concepts Inc.*, 2018 WL 6587919, at *1 (E.D. Pa. July 17, 2018). As this Court explained, "[b]ecause of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees: (1) a compromise supervised by the Department of Labor pursuant

to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (citing *Lynn's Food Stores Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir.1982)). When courts evaluate a proposed settlement, "the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (quoting *Lynn's Food,* 679 F.2d at 1354). This standard has been explained through three elements: "***First***, the agreement must resolve a bona fide dispute under the FLSA— that is, it must reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute. . . ***Second***, the settlement must be fair and reasonable for the employee(s). . . . ***Third***, the settlement must not impermissibly frustrate the implementation of FLSA in the workplace." *Carney v. Travelers Aid Soc'y of Philadelphia*, No. CV 19-3599, 2020 WL 703684, at *2 (E.D. Pa. Feb. 11, 2020) (internal quotations and citations omitted). In this case, all three elements are satisfied, so approval is warranted.

Courts routinely approve FLSA-only collective actions in a single step. *See, e.g.*, *Fried*, 2018 WL 6587919. However, in a large collective such as this one, following the two-step approval process ensures that the Court has preliminarily reviewed the Settlement before the Parties incur the expense of distributing notice, and provides additional due process protections for the more than 6,000 FLSA Opt-in Plaintiffs. *See Willix v. Health First, Inc.*, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 11, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). The Court should grant preliminary approval here so the Parties can distribute Notice.

### A.  The Settlement Resolves a Bona Fide Dispute

A settlement resolves a *bona fide* dispute when it falls "within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Here, Plaintiffs allege that Defendant improperly required them to perform too much untipped side work to allow payment at the tip credit wage rate, and therefore owes minimum wage and overtime payments. Defendant specifically denies that Plaintiffs are owed any wages under the FLSA or state laws, contending that Plaintiffs were properly paid under the applicable regulations. This reflects a *bona fide* dispute. *See Potoski v. Wyo. Valley Health Care Sys.*, 2020 WL 207061, at *3 (M.D. PA. Jan. 14, 2020) (dispute was *bona fide* on this basis). Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with continued litigation, the parties agree that a compromise is appropriate. *See Lynn's Food,* 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

The core dispute here concerns a complicated and evolving regulatory scheme.[4] While the Defendant acknowledges that servers sometimes perform side work, there are disputes about whether that work was directly related to tip producing activities, how much side work servers performed, and whether the regulations are enforceable. First, under the current regulations, if the

---

[4] *See* Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 Fed. Reg. 60,1147 (Oct. 29, 2021) (discussing history or regulatory changes to the 80-20 rule). A 2009 opinion letter during the George W. Bush's Administration attempted to rescind the rule; the Obama Administration withdrew the letter and restored the rule. The Trump Administration reissued the letter, with additional guidance, then issued a final rule in 2020. The Biden Administration issued a new final rule in 2021.

side work is "directly related," P.F. Chang's does not lose the tip credit unless the work is performed for a substantial amount of time (if it is not directly related to tip producing activities, it does not qualify for the tip credit). 29 C.F.R. §§ 531.56(f)(4); 531.56(f)(5). A "substantial amount" means that the side work exceeds a 20% workweek tolerance, or exceeds 30 continuous minutes, and P.F. Chang's vigorously disputes that servers' side work exceeds those thresholds. 29 C.F.R. § 531.56(f)(1), (2). Finally, P.F. Chang's disputes the enforceability of the tip credit rule, and has demonstrated an intent to challenge those rule.[5] Thus, there is a *bona fide* dispute about servers' entitlement to minimum wages.

Beyond this fundamental dispute, this litigation involved numerous other disputes, that are being resolved through this settlement, further supporting approval. For example, the Parties disputed whether collective treatment was appropriate; if and how representative evidence could be used to prove Plaintiffs' claims; whether Opt-in Plaintiffs who did not respond to discovery should be able to recover; whether any alleged violation was willful and therefore the appropriate statute of limitations; whether Defendant could support a good faith defense to liquidated damages; and the proper measure of damages (if any). This settlement resolves these disputes; approval is warranted.

## B. The Settlement Is Fair and Reasonable

When determining if an FLSA settlement is fair and reasonable, courts generally rely on the factors for approving class action settlements pursuant to Rule 23. *Reynolds v. Turning Point*

---

[5] Indeed, Defendant's counsel also represents with the Restaurant Law Center (RLC) and Texas Restaurant Association, who filed a lawsuit in the Western District of Texas contending the DOL exceeded its authority, violated the express language of the FLSA, violated the Administrative Procedures Act, and otherwise acted arbitrarily and capriciously in implementing these regulations. The case is now on appeal at the Fifth Circuit. *Restaurant Law Center v. U.S. Dep't of Labor,* No. 21-1106 (W.D. Tex.); No. 23-50562 (5th Cir.).

*Holding Co., LLC*, No. 2:19-CV-01935-JDW, 2022 WL 2541352, at *3 (E.D. Pa. July 7, 2022);

*Potoski*, 2020 WL 207061, at *3; *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *2 (M.D. Pa.

Sept. 25, 2013).

In the Third Circuit, courts have traditionally looked to "the *Girsh* factors" in deciding

whether a class-action settlement is fair and reasonable. *See Girsh v. Jepson*, 521 F.2d 153, 157

(3d Cir. 1975.) These factors are: (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the

best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery

in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (alterations omitted) (quoting

*City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). Rule 23 has since been

amended to provide specific factors[6] but *Girsh* remains widely used (*e.g.*, *Potoski*, 2020 WL

207067, at *3), and "*Girsh* substantially overlaps with the factors identified in Rule 23." *Hall v.*

*Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621, at *2 n.1. (E.D. Pa. Aug. 23, 2019). Here, an

analysis of the *Girsh* factors or the Rule 23(e) factors shows that approval is warranted.

---

[6] Under Federal Rule of Civil Procedure 23(e), courts look to several factors when determining
whether to grant final approval of a class action settlement. *Hall*, 2019 WL 3996621, at *2 (quoting
Fed. R. Civ. P. 23(e)(1)). Specifically, these are whether: (A) the class representatives and class
counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay
of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
including the method of processing class-member claims; (iii) the terms of any proposed award of
attorney's fees, including timing of payment; and (iv) any agreement required to be identified
under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *Id.*
(quoting Fed. R. Civ. P. 23(e)(2)).

### 1. The Settlement Accounts for the Costs, Risks, and Delays of Litigation (Factors 1 and 6)

The first *Girsh* factor strongly supports this Settlement. As this Court has recognized, there are "substantial litigation risks inherent in FLSA and wage lawsuits." *Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 WL 3943355, at \*8 (E.D. Pa. Aug. 21, 2019). This case has already been pending for nearly six years, which is a clear indication that future proceedings would have been hard fought. *Potoski*, 2020 WL 207061, at \*4 ("if the litigation were to continue, as it likely would given the past eight years of contentiousness, it would be at great expense as the attorney's fee and other costs would continue to accumulate.") The merits of the litigation were hotly contested by both sides. Defendant filed a motion for judgment on the pleadings or summary judgment. (ECF No. 37.) The Parties would almost certainly also have filed competing briefs for summary judgment in light of the voluminous discovery, likely involving expert analysis, all costly endeavors and all prior to trial. Continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court, and possibly also before the Third Circuit, in the event of any appeals. These proceedings would have significantly delayed any relief to FLSA Opt-in Plaintiffs, and might have resulted in no relief at all.

Similarly, the sixth factor (risk of maintaining the class through trial) supports approval here. Defendant opposed Plaintiffs' motion for conditional certification (ECF No. 76), even seeking mandamus review of that decision. Defendant would have opposed any motion for class certification, and would have filed a motion to decertify the FLSA Collective. *See Galt*, 310 F. Supp. 3d at 494–95 ("[T]he practical and legal risks of decertification [favor] settlement[.]"). While Plaintiffs maintained that the servers are similarly situated and that their claims could be proven from Defendant's records, there was substantial risk that the case could be decertified before trial, which would have forced the Opt-in Plaintiffs—who, by definition, earned low hourly

wages and have small individual claims—to re-file their cases to have a chance at recovery. These factors favor approval.

### 2.   The Parties Conducted Ample Discovery (Factor 3)

The third *Girsh* factor (stage of the proceedings and extent of discovery conducted) strongly supports approval. The Parties engaged in extensive discovery, allowing them to evaluate the strengths and weaknesses of their respective positions. *See Smith v. Merck & Co., Inc.*, 2019 WL 3281609, at *5 (D. N.J. July 19, 2019) (where the parties "engaged in significant discovery," plaintiffs demonstrated "the parties were armed with enough information to assess the strengths and weaknesses of their case and strike a deal relative to the risks of prolonged litigation"). Plaintiffs deposed a corporate 30(b)(6) witness, and obtained and reviewed millions of detailed time records from Defendant, allowing for detailed analysis of Plaintiffs' claims. (Brome Decl. ¶ 10.) Additionally, more than 750 Opt-in Plaintiffs responded to some or all of Defendant's written discovery. (*Id.* ¶ 3.) When the Parties requested the Court stay the case to engage in mediation, they had ample information to evaluate the claims and calculate possible outcomes, supporting approval.

### 3.   The Settlement is Within the Range of Reasonableness, in Light of the Risks and Possible Recovery (Factors 8 and 9)

Several of the *Girsh* factors (4 – risk of establishing liability, 5 – risk of establishing damages, 8 – range of reasonableness in light of best possible recovery, and 9 – range of reasonableness in light of litigation risks) call for balancing the outcome from settlement against the possible outcomes through litigation. Likewise, Rule 23 seeks to balance the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments). This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison

with the settlement figure." *Id*. Here, the Settlement is within the acceptable range, and supports approval.

At the time of mediation, Plaintiffs' Counsel conducted detailed damages models based on analysis of Defendant's point-of-sale data, and supplemented them with information obtained through the extensive Plaintiff discovery process. (Brome Decl. ¶ 5.) Depending on the assumptions and inputs, the possible recovery could vary considerably. On the high end, assuming <u>complete</u> success for Plaintiffs – defeating decertification, proving liability, proving that Defendant's violation was willful, defeating Defendant's good faith defense to liquidated damages, and recovering wage differentials for 33% of the Opt-in Plaintiffs' work time – Plaintiffs' Counsel calculated Defendant's exposure at $████████. This best-case scenario would only occur if Plaintiffs were able to recover for <u>all</u> time spent performing side work, but the current regulations make this unlikely, since they provide that an employer "cannot take a tip credit for any time spent on directly supporting work <u>that exceeds the 20 percent tolerance</u>." 29 C.F.R. § 531.56(f)(4). Under a more plausible outcome, if Plaintiffs did not establish a willful violation, did not obtain liquidated damages, and only recovered damages based on 10% of their work time, Plaintiffs' Counsel calculated Defendant's exposure (unliquidated) at $██████. Of course, even that result assumes that Plaintiffs maintained collective status through trial and established liability, neither of which are foregone conclusions. Based on these possibilities, the $██████ settlement represents between ██% of the best possible recovery, and ██% of the realistic recovery. This range of recovery supports approval in a tip credit case like this one. One recent case found that a recovery that represented "about 25% of what most class members could recover if . . . they were completely successful on their primary, tip credit claim" to be fair and reasonable. *Mygrant v. Gulf Coast Rest. Grp., Inc.*, No. CV 18-0264-WS-M, 2019 WL 4620367, at *3 (S.D. Ala. Sept. 23,

2019). Another tip credit case found a very similar range to support approval, when considering "a figure that represents between 20% and 115% of the amounts Plaintiffs estimate they could recover after full discovery, trial, and appeal." *Zorrilla v. Carlson Restaurants Inc.*, No. 14 CIV. 2740 (AT), 2017 WL 5004848, at *2 (S.D.N.Y. Oct. 26, 2017) (tip credit case with additional claims not present here). Tip credit claims can be challenging, and here there are no other causes of action that could create a minimum recovery. *See Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *3 (D. Kan. Oct. 29, 2021) (granting settlement approval in case involving tip credit claims based on comparison with claims for "off-the-clock work and unpaid wages attributable to timekeeping system errors—the claims Florece's counsel considers to be the strongest."). Additionally, prior to any reallocation, the average FLSA Opt-in here will recover a gross value over ███, and the average net recovery after attorneys' fees and costs will be close to ████████████████████████████████████████████

███ *See Stokes v. Consolidated Wings Investment, LLC*, S.D. In. Case No. 1:15-cv-01932-RLY-TAB, ECF No. 58, p. 5 of 24 ████████████████████████████████

███. Under any metric, the settlement here delivers a fair and reasonable value on challenging claims.

While Plaintiffs vigorously contested Defendant's positions and were fully prepared to litigate the disputed issues, this settlement takes into account the risks associated with these various components of Plaintiffs' damages. Given the probability of success and the risks of moving forward with litigation, the settlement is fair and appropriate. *See Potoski*, 2020 WL 207061, at *4 (litigation risks including statute of limitations issues regarding FLSA willfulness and issues regarding amount of overtime hours actually worked justified approval); *Hall*, 2019 WL 3996621,

at *4 (litigation risks including FLSA's statute of limitations standard for willfulness and issues regarding amount of overtime hours actually worked supported granting preliminary approval).

### 4. The Remaining *Girsh* Factors Support Preliminary Approval (Factors 2 and 7)

The two remaining *Girsh* factors (2 – the reaction of the class to the settlement, and 7 – the ability of the defendant to withstand a greater judgment) are either neutral or support preliminary approval. The settlement here covers only FLSA Opt-ins, who have affirmatively signed consent forms authorizing Plaintiffs' Counsel to represent them in this litigation, indicating their support for this path. (*See* ECF No. 97-1 at 5 (consent form designates Plaintiff's Counsel to represent the Opt-ins "for all purposes in this lawsuit.").) This fact supports preliminary approval. *See Potoski*, 2020 WL 207061, at *4 (individuals had "opted into this action and agreed to let Class Counsel represent them in these proceedings, including overseeing settlement negotiations."). Additionally, the Parties will be distributing formal Notice of the Settlement to all impacted FLSA Opt-in Plaintiffs. This notice will fully inform Opt-ins of their rights and their options to participate in the settlement or to exclude themselves, further supporting approval under this factor. *Id.* (individuals "will receive notice and be fully informed of their right to opt out of the settlement and pursue their actions individually."). The seventh factor should be afforded little weight, given that all other factors support approval. *Id.* (seventh factor need not be squarely addressed given "the overwhelming weight of the other factors."). Even so, this factor supports approval. Defendant, like other restaurants, has faced huge challenges during and after the global pandemic. This factor is neutral or supports approval.

### 5. The Remaining Rule 23 Factors Support Preliminary Approval

Rule 23(e) includes several other factors that are similar, but not identical, to the *Grish* factors. These also support preliminary approval.

First, the proposal treats Opt-ins equitably. This factor seeks to prevent the "inequitable treatment of some class members *vis-à-vis* others." Fed. R. Civ. P. Advisory Committee Notes (2018 Amendments). Here, the settlement allocation treats Opt-ins equitably relative to each other. To calculate each FLSA Opt-in Plaintiff's *pro-rata* settlement allocation, Plaintiffs' Counsel performed a detailed and comprehensive damages analysis. (Brome Decl. ¶ 6.) For each FLSA Opt-in Plaintiff, the analysis considered the hours worked for Defendant during the applicable statutory period and wages paid. (*Id.*) The analysis then calculated the difference between the wage rate actually paid and the federal minimum wage. (*Id.*) Finally, the analysis assumed that each FLSA Opt-in Plaintiff would be able to recover that minimum wage differential for 30% of the time worked at sub-minimum wage rates. (*Id.*) Based on this analysis, Plaintiffs' Counsel allocated individual *pro rata* Settlement Shares for each FLSA Opt-in Plaintiff. (*Id.*) In conjunction with the settlement, Defendant has begun to supplement its data production, and is continuing to provide additional data; Plaintiffs' Counsel will incorporate the supplemental data productions into the allocation prior to notice. (*Id.*) Plaintiffs have therefore satisfied the requirement that Opt-ins are treated equitably.

Second, the Named Plaintiffs and Plaintiffs' Counsel adequately represented the group. This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop enough information about the case to appreciate sufficiently the value of the claims"). Plaintiffs' Counsel exhausted considerable time and effort on this case, including: (1) taking a 30(b)(6) deposition; (2) requesting and reviewing written and electronic discovery, including voluminous point-of-sale data; (3) constructing damages models; (4) briefing and arguing numerous contested motions; and

(5) collecting information and responding to discovery from hundreds of servers. (*See* Brome Decl. ¶ 10.) Plaintiffs' Counsel's efforts have been adequate. The Named Plaintiffs are likewise adequate. The Named Plaintiffs have demonstrated a commitment to the case by assisting with the preparation of the Complaints, executing declarations, and completing written discovery. They were prepared to sit for a deposition and available to assist with mediation and negotiations. (Brome Decl. ¶ 8.) They have maintained regular contact with Plaintiffs' Counsel and have been and remain committed to representing the class. (*Id.*)

Third, the proposed Settlement was negotiated at arm's length. As discussed above, the proposed settlement was the product of extensive, arm's length negotiations, with experienced and informed counsel on both sides. Plaintiffs' Counsel is experienced in wage and hour and class action matters and has reasonably assessed the risks of continued litigation and benefits of settlement. Defendant was represented by multiple international law firms likewise experienced in wage-and-hour class and complex litigation. The parties engaged in mediation with a well-respected wage and hour mediator in an effort to resolve their dispute. This raises a presumption of prudence. *See Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.")

Fourth, the method for distributing relief is effective. Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments). After preliminary approval, the Settlement Administrator will mail and email *individualized* notices to each FLSA Opt-in Plaintiff, and send

text message notifications. (Agreement ¶¶ II.F.1., II.G.2.b.) The Administrator will use any means practicable to find new contact information for returned mail (*id.* ¶ II.G.2.c) and, for any FLSA Opt-in Plaintiffs who do not respond within the Initial Notice Period, the Parties will work together to conduct additional outreach efforts over the next thirty (30) days to attempt to obtain a response. (Agreement ¶ II.A.2.) FLSA Opt-in Plaintiffs will have multiple options to return their release forms in order to receive payment, and the Settlement ensures the best form of notice practicable. This process is reasonable and favors preliminary approval.

### C. The Proposed Attorneys' Fees Award are Reasonable and Should be Preliminarily Approved

As part of this motion, Plaintiffs request that the Court make a preliminary finding that Plaintiffs' Counsel's attorneys' fees request is reasonable. Plaintiffs request an amount of attorneys' fees of ▮▮▮▮▮▮ (33% of the Total Settlement Amount), costs including settlement administration of up to ▮▮▮▮▮ (an amount to be finalized at final approval), and enhancements of ▮▮▮▮ to the two Named Plaintiffs. (*Id.* ¶ II.D.1-.2.)

In the Third Circuit, courts have approved the use of the percentage-of-recovery method for awarding attorneys' fees in common fund cases such as here. *See*, 310 F. Supp. 3d at 497 (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (and observing also that the approximate range of approval for attorneys' fees in common fund cases ranges from 19% to 45%). Plaintiffs' request is reasonable and should be preliminarily approved. Because the Court can revisit this request at final approval, it may defer an analysis of the *Gunter* factors.[7] However, Plaintiffs note that the percentage of the fund requested is consistent with typical fee awards. *See Williams v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL

---

[7] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

4018205, at *10 (E.D. Pa. Sept. 9, 2011) (in class action cases in the Third Circuit, "the median

fee award was 33.3%."). Additionally, a lodestar crosscheck here results in a negative multiplier.

(*See* Brome Decl. ¶¶ 9-16 (current lodestar value of over ████████).). The negative multiplier—

*i.e.*, the lodestar that is higher than the requested fees—"confirms that the requested attorney's fee

award is fair and reasonable under the FLSA." *Carney*, 2020 WL 703684, at *4; *accord Solkoff v.*

*Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 658 (E.D. Pa. 2020). A recent tip credit case

similarly awarded attorneys' fees of one-third of the gross amount. *Zorrilla*, 2018 WL 1737139,

at *2. Finally, the Settlement Notice will inform FLSA Opt-in Plaintiffs of the fee request,

providing an opportunity for them to raise any concerns. The attorneys' fee request is reasonable

and should be preliminarily approved.

The Court should likewise preliminarily approve the proposed service awards, which will

be formally requested along with attorneys' fees and costs. The Settlement provides for ████████

for each of the two Named Plaintiffs. Such awards are routinely approved, because "[i]ncentive

awards are not uncommon in class action litigation and particularly where, as here, a common fund

has been created for the benefit of the entire class." *Cullen v. Whitman Med. Corp.*, 197 F.R.D.

136, 145 (E.D. Pa. 2000) (internal quotations omitted). Here, the proposed service awards are

modest in comparison to the relief made available, as well as within the range of reasonable

awards. *See*, *e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, at *10 (E.D. Pa.

Aug. 26, 2019) ($10,000.00 service payments granted); *Arrington v. Optimum Healthcare IT, LLC*,

2018 WL 5631625, at *9 (E.D. Pa. Oct. 31, 2018) ($7,500.00 service payments granted); *Blofstein*

*v. Michael's Family Rest.*, 2019 WL 3288048, at *9  ($7,500.00 service payments granted). The

settlement notices will inform FLSA Opt-in Plaintiffs of the requested enhancement awards. The

Court should preliminarily approve these amounts.

**D.  The Settlement Does Not Frustrate FLSA Implementation**

The final consideration is whether the proposed settlement would frustrate the FLSA's implementation. The common problems courts find under this factor are overbroad releases or restrictive confidentiality provisions. This settlement does not suffer from these defects. Although Plaintiffs and Plaintiffs' Counsel agree not to affirmatively publicize the settlement and to file monetary amounts redacted (with the Court's prior approval – *see* ECF Nos. 201, 202), the settlement is not confidential, and FLSA Opt-ins Plaintiffs are free to discuss it with their colleagues. This type of limited confidentiality provision does not frustrate the purposes of the FLSA, since plaintiffs remain "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).

As set forth above, the scope of the release for the FLSA collective is appropriately limited to wage and hour claims, and is not a general release. *See, e.g.*, *Altnor*, 197 F. Supp. 3d at 764 ("Also the Settlement does not contain impermissibly broad release provisions, which avoids yet another common pitfall."). The scope of the release is clearly set out in the settlement notice. Because Plaintiffs' Counsel analyzed sufficient time and pay data to consider other wage and hour claims, this scope of release is appropriate, and does not allow "the employer to extract from the plaintiff a benefit beyond what he is compensated for in exchange for payment of the fair wages he is owed." *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 660 (E.D. Pa. 2020) (denying approval of FLSA settlement containing a general release).

This settlement agreement does not frustrate FLSA implementation, and should be approved.

## CONCLUSION

For the reasons set forth herein, Plaintiffs request that the Court grant the Joint Motion for Preliminary Settlement Approval in full.

Respectfully submitted,

Date:  May 16, 2024

**NICHOLS KASTER, PLLP**

s/ Daniel S. Brome
Reena I. Desai, MN Bar # 0388311*
4700 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Telephone (612) 256-3244
Email: rdesai@nka.com

Daniel S. Brome, CA Bar # 278915*
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone (415) 277-7235
Email: dbrome@nka.com

*Admitted pro hac vice

**SCHALL & BARASCH**

Patricia A. Barasch
110 Marter Ave #302
Moorestown, NJ 08057
Telephone: (856) 914-9200
Email: pbarasch@schallandbarasch.com

ATTORNEYS FOR PLAINTIFFS
AND OTHERS SIMILARLY SITUATED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above was filed electronically on May 16, 2024 pursuant to the service requirements of the ECF/CM for the Eastern District of Pennsylvania, which will notify all counsel of record.

s/ Daniel S. Brome_____
Daniel S. Brome
